CLARK OIL & REFINING CORPORATION, Plaintiff—Counterdefendant—Appellee—Cross-appellant, *v.* JOHN H. THOMAS, Defendant—Counterclaimant—Appellant—Cross-appellee.

(No. 59318;

First District (5th Division)—December 27, 1974

William E. Kelly, of Chicago, (Pope, Ballard, Shepard & Fowle, of counsel), for appellant.

Porcelli & Jorgenson and Rabens, Formusa and Glassman, both of Chicago, (George C. Rabens, of counsel), for appellee.

Mr. JUSTICE BARRETT delivered the opinion of the court:

Defendant brings this appeal following a jury trial in which a verdict was entered granting possession of the subject premises to plaintiff. Plaintiff has cross-appealed seeking reversal of the judgment awarding $5,000 in damages to defendant-counterplaintiff.

Plaintiff filed this forcible entry and detainer action to gain possession of a certain gasoline station premises occupied by defendant. Defendant filed affirmative defenses and a counterclaim which included alleged violations of the Illinois antitrust laws and the unlawful withholding of $6,200 in robbery-insurance proceeds.

On appeal, defendant alleges that the trial court erred in striking the affirmative defenses and counterclaim allegations relating to the Illinois antitrust laws. Plaintiff's cross-appeal seeks reversal of the judgment awarding defendant damages on the counterclaim, alleging that there was no evidence against plaintiff to support the verdict. Plaintiff has also moved to dismiss defendant's appeal because defendant failed specifically to request a new trial in his post-trial motion and now seeks that remedy through this appeal.

The facts in this case show that plaintiff is a refiner of gasoline products which it markets to retail dealers who sell to the public. Defendant was a retail service station dealer who leased a Clark service station

under a 1-year lease. The lease was dated August 31, 1972, and covered the premises at issue in this suit. Plaintiff and defendant also entered into a 1-year retail dealer consignment agreement dated August 31, 1972, under which plaintiff agreed to supply defendant with gasoline. Under the terms of the lease, rent was to be paid in a sum of 2 cents per gallon for each gallon of gasoline sold from the premises each day. The rent was to be remitted each day, except Saturday and Sunday, for the previous day's business.

The record shows that defendant was delinquent in his remittance of payments for consigned products and rent for most of the month of January, 1973. He failed to remit on a daily basis from January 1 until January 11. Defendant also failed to remit money due from January 11 to January 23, except for $691.03 due for January 19, which amount was tendered in cash to plaintiff's assistant district manager. Defendant's total delinquency from January 11 to January 23 amounted to approximately $9,000.

In explanation of his delinquencies, defendant claimed that he sustained two robberies during January, 1973. As a result of the robberies, defendant allegedly sustained losses of $6,200 for which he made claim to his independent insurance carrier.

On January 22, 1973, defendant assigned any proceeds he might receive under his insurance claims to plaintiff to be applied toward monies due to it. On January 22, defendant also acknowledged, in writing, that he was indebted to plaintiff in the amount of $7,741.96 for consigned gasoline products. He promised to pay the amount due by the next day.

On January 23, 1973, defendant failed to make any further payments of monies he owed plaintiff. Accordingly, plaintiff tendered a letter to defendant stating that it was exercising its option to terminate defendant's lease and re-enter the premises because defendant had not made the daily payments due for consigned products and rents. Defendant agreed to return possession of the service station premises to plaintiff. Later that day, a new dealer, Raymond Howard, was installed. Defendant turned over the keys to the service station to the new dealer, and plaintiff's representatives left the premises.

The next day, January 24, 1973, John Cammack, plaintiff's assistant district manager, received a phone call from defendant who stated that he had not, in fact, given up the station. When Cammack went to the station later that afternoon, defendant was back in possession of the station and the new dealer was not to be found.

Plaintiff then instituted this action to regain possession of its service station.

In his answer, defendant denied the allegations of the complaint and affirmatively alleged that defendant occupied the premises under an expired lease; that plaintiff's alleged policy of operating a gasoline retail outlet is in violation of the Illinois Antitrust Act (Ill. Rev. Stat. 1973, ch. 38, par. 60—1 *et seq.*); that plaintiff's attempted eviction of defendant was in retaliation for his refusal to conspire with plaintiff to violate the Illinois antitrust laws in various unspecified ways, including claimed retail price fixing and exclusive dealing; that plaintiff's alleged conduct in retaliation for defendant's refusal to conspire with plaintiff to violate the Illinois antitrust laws was contrary to public policy; and that the relationship between the parties was not one of landlord-tenant subject to Illinois eviction law, but rather was that of joint adventurers or franchisee.

Defendant's counterclaim incorporated by reference the allegations of his answer and affirmative defenses and alleged that in violation of the Illinois antitrust laws plaintiff coerced defendant into unlawfully fixing the retail price of plaintiff's products and required defendant to purchase from suppliers which plaintiff had designated; that plaintiff used the lease of its service station and the threat of nonrenewal to coerce defendant into participating in the claimed unlawful conduct, thereby placing him at a competitive disadvantage. Defendant claimed injury in the amount of $50,000. Defendant also alleged that he was required to purchase robbery insurance from an agency that works closely with plaintiff; that he had losses totaling $6,200 which were covered by the insurance; that he submitted "proofs of loss" but that plaintiff never accounted to him for the $6,200 loss allegedly covered by the insurance.

Plaintiff subsequently moved to strike the affirmative defenses and the counterclaim as not cognizable in law and not germane to the issues in the forcible entry and detainer action. After hearing arguments, the court struck the affirmative defenses relating to alleged violations of the Illinois antitrust laws and the claimed joint adventurer-franchisee-hold-over tenant status. The remainder of the counterclaim contained allegations that plaintiff had not accounted for or paid defendant the $6,200 in robbery insurance proceeds and that defendant was forced to run a "Clark operation" and was thereby put at the competitive disadvantage, suffering damages in the amount of $50,000.

Subsequent to granting the motion to strike certain defenses and counterclaim allegations, the court allowed plaintiff's motion *in limine* which directed defendant and his counsel to refrain during the trial from referring to defenses or counterclaims which had been stricken.

Following trial by jury, judgment was entered in favor of plaintiff on the finding that defendant was guilty of unlawfully withholding possession of the station premises. Damages were assessed in favor of defendant on his counterclaim in the amount of $5,000. Both sides filed post-trial motions. Plaintiff moved the court to set aside the jury verdict on the counterclaim and to vacate the judgment entered thereon. In the alternative, plaintiff moved for a new trial. Defendant moved the court to arrest the judgment in favor of plaintiff, or, in the alternative, to set aside the verdict of the jury and vacate the judgment entered upon that verdict. The trial court denied all post-trial motions.

OPINION

The first issue before us is whether the affirmative matters stated by defendant in his answer and counterclaim were properly stricken. Specifically, we are asked to decide whether or not the affirmative matters raised by defendant are germane to the issues in the forcible entry and detainer suit.

■■ Forcible entry and detainer is brought to effectuate the restoration of possession of premises to the person entitled thereto. (Ill. Rev. Stat. 1973, ch. 57, par. 2.) Generally, the forcible entry and detainer action is a proceeding of special and limited jurisdiction which is unimpeded by collateral matters not directly connected with the question of possession. *Johnston v. East St. Louis Illinois Homes, Inc.*, 71 Ill.App.2d 79, 218 N.E.2d 38.

In part, the statute provides that "no matters not germane to the distinctive purpose of the proceeding shall be introduced by joinder, counterclaim or otherwise: Provided, however, that a claim for rent may be joined in the complaint, and judgment obtained for the amount of rent found due." (Ill. Rev. Stat. 1973, ch. 57, par. 5). Certain equitable defenses and counterclaims directly connected with and germane to the right of possession are available. *Bleck v. Cosgrove*, 32 Ill.App.2d 267, 177 N.E.2d 647.

In the instant case, the trial court decided to strike the portions of the defense and counterclaim relating to antitrust claims. We are now asked to determine whether the stricken defenses and counterclaims asserted by defendant were "germane to the distinctive purpose of the proceedings." Defendant argues that such claims raise an issue as to the enforceability of plaintiff's right to terminate the lease agreement for failure to pay rent due. Plaintiff argues that defendant is seeking to litigate complex issues of law and fact under the antitrust laws by way of counterclaim to a statutory proceeding. Further, plaintiff contends that no

authority cited by defendant permits such a result and no principle of law or equity requires it.

It is well recognized that the legal right of defendants in forcible entry and detainer actions to raise affirmative defenses has been expanded by *Jack Spring, Inc. v. Little*, 50 Ill.2d 351, 280 N.E.2d 208, and *Rosewood Corp. v. Fisher*, 46 Ill.2d 249, 280 N.E.2d 208. *Jack Spring* holds that where the landlord's right to possession is asserted solely by reason of nonpayment of rent, the question of whether rent is due and owing is crucial to the decisive issue of possession. *Rosewood* holds that equitable defenses may be raised in, and are germane to, the determination of the right of possession.

■■ In the case at bar, unlike either *Rosewood* or *Jack Spring*, defendant occupied a commercial premises under a written lease. The lease provided that defendant make payments of rent and monies due for consigned products on a daily basis and that if he failed to do so plaintiff, which owned the station, had the right to repossess it. Plaintiff supplied defendant with an operating gas station and otherwise performed its obligations under the contract. Under those circumstances we cannot hold that the antitrust laws provided equitable defenses which defendant could raise in this action.

Regardless of the validity of the contract between the parties at the time this action was brought, the record clearly shows that defendant was indebted to plaintiff in the amount of $7,741.96. Although this amount included rent owed by defendant, it primarily consisted of monies due for consigned gasoline products. Simply stated, defendant was using plaintiff's premises to conduct his business and was selling plaintiff's products. He was paying for neither. Under these circumstances, the lease specifically states that it is the right of the lessor to take possession of the premises if the lessee fails or refuses to pay rent or pay other monies due under the terms of the retail agreement executed by the parties.

■■ Therefore, under the factual conditions of this case, we hold that the aspects of defendant's answer and counterclaim based on antitrust laws are not germane to the decisive issue of possession. The trial court acted properly in striking the affirmative defenses and counterclaim based on violation of the antitrust laws.

On cross-appeal, plaintiff argues that there is no evidence in the record on which to base any finding of liability on the part of plaintiff to defendant. Defendant argues that he sustained two robberies from which his losses were $6,200. He further contends that plaintiff deprived him of the insurance proceeds which covered the loss.

By virtue of the written agreement between plaintiff and defendant, defendant assumed the risk of loss for any robbery or other loss. Consequently, he purchased robbery insurance from Casualty Insurance Company, an independent insurer, through the Insurance Survey Agency. No insurance coverage was written by plaintiff, and no provision of the lease required defendant to purchase such insurance. Following the two robberies, plaintiff's agent delivered and picked up proof of loss forms which defendant prepared. The proofs of loss were received by the insurance company and produced at trial. Defendant offered no proof to show that the claims were denied or in any way interfered with by plaintiff or that plaintiff had ever received payments for the claims submitted. There was testimony to the effect that no money was ever paid to plaintiff. Furthermore, there was testimony that on January 22, 1973, defendant assigned any proceeds he might receive under his insurance claims to plaintiff to be applied toward monies due it. Defendant admits that he read and signed the assignment and that it was a true and correct document when signed. The assignment states that the insurance proceeds were to be in partial payment of monies defendant owed to plaintiff. The debt was stated to be at least $7,741.96 at the time of the assignment.

In short, there is no evidence on which to base the assumption that plaintiff wrongfully deprived defendant of $6,200 in insurance proceeds. Furthermore, he failed to prove that plaintiff ever received any money for which it should account to him or that plaintiff improperly obtained the insurance assignment from him.

■■ There is also no evidence in the record on which to base a finding that defendant sustained any injury or damage as a result of any conduct of plaintiff. The evidence of lost profits was speculative and conjectural and was not in any way established with reasonable certainty by competent proof. We find no evidence to establish any liability on the counterclaim and no evidence of any damage to defendant on which any award could be based. We therefore reverse the judgment for defendant on the counterclaim. In view of the fact that we have decided this case on the merits, we find it unnecessary to address ourselves to plaintiff's motion to dismiss the appeal.

For the reasons stated above, the judgment of possession entered in favor of plaintiff is affirmed and the judgment award of damages entered in favor of defendant on the counterclaim is reversed.

Affirmed in part; reversed in part.

DRUCKER and LORENZ, JJ., concur.