CLARK OIL & REFINING CORPORATION, Appellant, v. LEISTIKOW, Respondent. [Case No. 455.]
CLARK OIL & REFINING CORPORATION, Appellant, v. HOHLWECK, Respondent. [Case No. 456.]
CLARK OIL & REFINING CORPORATION, Appellant, v. MEYSEMBOURG, Respondent. [Case No. 457.]
CLARK OIL & REFINING CORPORATION, Appellant, v. HAYES, Respondent. [Case No. 458.]

*Nos. 455–458. Argued April 8, 1975.—Decided June 30, 1975.*
(Also reported in 230 N. W. 2d 736.)

232

For the appellant there were briefs by *Peter R. Mc-Enroe* and *Thomas R. Savage*, both of Milwaukee, and *Melville C. Williams* and *William E. Kelly*, both of Chicago, attorneys, and *Pope, Ballard, Shepard & Fowle* of Chicago, of counsel, and oral argument by *Mr. Kelly* with introduction by *Mr. Savage*.

For the respondents there was a brief by *Charne, Glassner, Tehan, Clancy & Taitelman, S. C.* of Milwaukee, and oral argument by *William Glassner* and *Robert Corris* of Milwaukee.

HANLEY, J. The following issues are presented upon this appeal:

1. Should demurrers have been sustained to defenses that there could be no eviction because the written agreements were franchise agreements?

2. Should the demurrers have been sustained to defendants' promissory estoppel defense?

3. Does the contract of adhesion principle apply to make the written agreement between the parties void and unenforceable so that Clark's complaint should be dismissed?

4. Should the counterclaims of the defendants have been dismissed under sec. 299.02 (2), Stats.?

5. Should Clark's demurrers to the first counterclaim seeking reformation of the written agreements have been sustained on the basis of the statute of frauds and the parol evidence rule?

6. Should Clark's demurrer have been sustained to the second counterclaim relating to alleged violations of the state franchise investment law and use of the short term of the written agreements to discipline the defendants?

7. In this action, should a demurrer have been sustained to the third counterclaim asking the trial court to try all of the issues, as between the parties, presented in the pending federal antitrust action?

*First defense.*

No argument is addressed to the overruling of the demurrers to the first defense. It is basically a denial of the allegations of the complaints. Under the allegations of defendants' answers, plaintiff would be put to its proof on the issues raised by the pleadings. It is, however, affirmatively alleged that the written agreements were in the nature of franchise agreements granting the defendants the right to engage in the business of dealing in Clark's goods under a marketing plan or system prescribed in substantial part by Clark and substantially associated with the plaintiff's business and trademark.

We find no merit to defendants' contention that the agreements involved here were franchise agreements subject to the Wisconsin franchise investment law. Sec. 553.21, Stats. This type of agreement is now governed by ch. 135, entitled "dealership practices." Under sec. 135.02 (6), "good cause" is defined and must be shown for the termination or nonrenewal of a dealership agreement. However, the provisions of this chapter are only applicable to agreements entered into after April 5, 1974, and are, therefore, not applicable to parties involved in these four cases.

The trial court's orders overruling the demurrers to the defendants' first defense can be affirmed because the allegations of the first defense of the answer if proven would constitute a defense. However, the affirmative defense contained in the first defense of the answer would not warrant an overruling of the demurrer.

*Second and third defenses.*

The second and third defenses set forth by the defendants are based on allegations that Clark's course of conduct violates certain federal and state laws. Because of these alleged violations, defendants state that Clark has unclean hands and the agreements violate public policy and are, therefore, unenforceable. Clark argues that these defenses are not recognizable in eviction actions.

This court has held for many years that only a limited number of controverted issues are permissible in an action for eviction:

"It has been repeatedly held by this court that, under the statute of 'forcible entry and unlawful detainer,' the question of title to the premises does not arise, and cannot be put in issue by the pleadings. . . . And in cases under those provisions of the chapter which authorize a landlord to dispossess his tenant under proceedings similar to those for the dispossession of a person who has forcibly entered upon the possession of another or

forcibly detains such possession from him, the only questions to be tried are—(1) whether the relation of landlord and tenant exists between the plaintiff and defendant; (2) whether such tenant holds over after the term of his lease has expired . . .; and (3) whether the proper notice has been given before the action is commenced. . . ." *Newton v. Leary* (1885), 64 Wis. 190, 194, 195, 25 N. W. 39.

Actions of this nature are now governed by ch. 299, Stats. Sec. 299.43, allows a defendant to plead orally or in writing, except that if plaintiff's title is put in issue by the defendant, his answer shall be in writing.

"This section authorizes the defendant to put at issue any of the allegations of the plaintiff's complaint, including title, thus putting to rest the old doctrine that in unlawful detainer actions the question of title does not arise and cannot be put in issue by the pleadings. . . . Of course, right to possession is the ultimate issue in an eviction action . . . ." R. Boden, *1971 Revision of Eviction Practice in Wisconsin*, 54 Marq. L. Rev. (1971), 298, 308, 309.

This court by judicial interpretation has added retaliatory eviction as another defense to an eviction. In *Dickhut v. Norton* (1970), 45 Wis. 2d 389, 173 N. W. 2d 297, the defense of retaliatory eviction was recognized where a landlord attempts to regain possession in retaliation for a tenant reporting housing violations. This decision was based on public policy. However, the defendants make no claim here that the instant action is a retaliatory eviction. In fact, defendants' brief below states at page 3, ". . . the defendants deny that they are attempting to portray these present actions 'as a retaliatory eviction' . . . ." There is no basis in the facts of these cases for the application of the theory of retaliatory eviction. The defendants' brief admits at page 4, that the plaintiff tendered new leases to all four defendants, along with a stipulation that signing them

would not prejudice defendants' antitrust claims against plaintiff.

An Illinois court has accepted Clark's position in a somewhat similar case. In *Clark Oil & Refining Corp v. Thomas* (1974), 25 Ill. App. 3d 428, 323 N. E. 2d 479, Clark brought a forcible entry and detainer action to gain possession of a certain gasoline station occupied by the defendant. Defendant was delinquent in payments of rents and for consigned products. The defendant alleged affirmative defenses including violation by Clark of the Illinois antitrust law, retaliation by Clark for its refusal to conspire with it to violate those laws, public policy and franchise relationship. Plaintiff's motion to strike the affirmative defenses and counterclaims was granted by the trial court as to allegations of violations of the antitrust laws and the claimed joint adventurer-franchisee-holdover-tenant status.

The appellate court stated that a forcible entry and detainer action is generally a proceeding of special and limited jurisdiction which is unimpeded by collateral matters not directly connected with the question of possession.

The defendants, in their statement of facts, admit they refused an offer to sign new leases even after an offer by Clark to let them do so and still reserve their rights to challenge the legality of the agreement.

Under the facts of these cases, we hold that the allegations of the second and third defenses of defendants' answers based on Clark's alleged course of conduct of violating certain state and federal laws are not germane to the issue of right of possession. The trial court should have sustained the plaintiff's demurrer to the defenses based on violations of antitrust laws.

*Promissory estoppel.*

In the fourth defense, the defendants allege that Clark is estopped from bringing this action because they were

induced to enter the agreements by representations that the defendants would be able to occupy the premises involved as long as they did well as dealers and ran good operations. The basis of the argument is the doctrine of promissory estoppel.

The position of Clark is (1) this defense is barred by sec. 704.03, Stats., because it would amount to an oral lease for a term in excess of one year; (2) a written agreement cannot be modified by oral representations; and (3) the averments do not establish the elements of promissory estoppel.

As to the question of the statute of frauds, it is necessary for a lease for more than one year to be in writing. Secs. 704.03 and 706.02, Stats. However, in *Knauf & Tesch Co. v. Elkhart Lake Sand & Gravel Co.* (1913), 153 Wis. 306, 316, 141 N. W. 701, this court said that the doctrine of estoppel is not in violation of the statute of frauds:

". . . The statute of frauds was not designed to enable the evil-disposed to possess an instrumentality with which to perpetrate fraud. It is the weapon of the written law to prevent fraud while the doctrine of estoppel is that of the unwritten law to prevent like evil. Each is effective in its appropriate field. Both are essential to prevent and redress wrongs. . . ."

While that case involved estoppel *in pais,* similar reasoning applies to promissory estoppel.

However, there is also difficulty with this defense as it relates to the parol evidence rule. In *Conrad Milwaukee Corp. v. Wasilewski* (1966), 30 Wis. 2d 481, 488, 141 N. W. 2d 240, this court said:

"The parol-evidence rule is not so much the rule of evidence as the rule of substantive law and requires the court to disregard such evidence even if it gets into the record without objection. *Morn v. Schalk* (1961), 14 Wis. (2d) 307, 111 N. W. (2d) 80. Oral testimony to be admissible under the parol-evidence rule must clarify an existing ambiguity and cannot establish an understand-

ing in variance with the terms of the written document. . . ."

In that case, this court reversed a trial court's holding overruling a demurrer to the answer in an unlawful detainer action. The defendant's defense involved interpreting an unambiguous contract by using parol evidence.

Also, in *Borkin v. Alexander* (1965), 26 Wis. 2d 432, 132 N. W. 2d 587, it was held that material terms could not be modified without complying with the statute of frauds.

The written agreements here are clear as to the term of the agreement and contain a clause that they constitute the entire agreements and no modifications or extensions are binding unless in writing and signed by Clark's marketing vice president.

The doctrine of promissory estoppel was adopted by this court in *Hoffman v. Red Owl Stores, Inc.* (1965), 26 Wis. 2d 683, 133 N. W. 2d 267. In *Forrer v. Sears, Roebuck & Co.* (1967), 36 Wis. 2d 388, 392, 153 N. W. 2d 587, this court said:

"In *Hoffman* we stated that three questions must be answered affirmatively to support an action for promissory estoppel:

" '(1) Was the promise one which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee?

" '(2) Did the promise induce such action or forbearance?

" '(3) Can injustice be avoided only by enforcement of the promise?' "

Here, defendants have alleged a promise or representation of occupancy as long as they did well, made by Clark's agents or servants to induce them to enter the agreements. They allege that they left their former employers of long-standing as a result of these promises and entered into the agreements. We think these allegations are not sufficient to raise promissory estoppel.

There is no allegation that injustice can only be avoided by enforcing the promise and it is questionable if the leaving of former employments are actions of "a definite and substantial character." In both *Hoffman* and *Forrer*, the plaintiffs suffered monetary losses in preparing themselves for their associations with those defendants.

### Contract of adhesion.

The fifth defense is that the agreements amount to contracts of adhesion and are, therefore, unenforceable and void. It is not alleged that the contracts are ambiguous. It is alleged that Clark uses its superior bargaining power to dictate the terms of the agreements and does not allow negotiations as to the terms. It is Clark's position that the rule of contracts of adhesion only goes to interpretation of the contract.

However, defendants without disputing plaintiff's contention, ask this court to hold that any filling station lessee whose lease is a contract of adhesion may, by refusing to sign a new lease, thereby convert his expired lease into a life tenancy in the premises terminable only for "cause." Such conversion of a rule of contract interpretation would not be justified under the facts of these cases.

In addition, the fifth defense asserts that the agreements are void. If this is so, the defendants would not have a defense. In such a case, the defendants would be occupying the premises under a void lease and, therefore, at best, tenants holding over from year to year. *See: Hauser v. Fetzer* (1924), 183 Wis. 25, 30, 31, 197 N. W. 170 and sec. 704.03 (2), Stats. Such a tenancy would be terminable by giving notice as required by sec. 704.19, which was done here.

### Counterclaims.

Clark contends that the demurrers to all three counterclaims should have been sustained by reason of sec.

299.02 (2), Stats. A defendant's pleading in an eviction action is governed by sec. 299.43. As to counterclaims, this section provides:

". . . Within the limitation of s. 299.02 the defendant may counterclaim provided that in construing s. 299.02 as applied to eviction actions, any claim related to the rented property shall be considered as arising out of the transaction or occurrence which is the subject matter of the plaintiff's claim."

Sec. 299.02 (2), Stats., provides, in part, as follows:

"If a counterclaim or cross complaint is filed, which does not arise out of the same transaction or occurrence that is the subject matter of the plaintiff's claim and which is beyond the limitations of s. 299.01, the court shall dismiss the same and proceed under this chapter."

Clark contends that the matters extrinsic to the leases underlying defendant's counterclaims did not arise from the same transaction or occurrence that is the subject matter of Clark's eviction suit.

It is well-recognized that the legal right of defendants in eviction actions to raise affirmative defenses has been expanded. In *Dickhut v. Norton, supra,* the defense of retaliatory eviction was recognized where a landlord attempts to regain possession in retaliation for a tenant reporting housing violations. This decision was based on public policy. In *Housing Authority of City of Milwaukee v. Mosby* (1972), 53 Wis. 2d 275, 192 N. W. 2d 913, this court held that a United States department of housing and urban development administrative order requiring an administrative hearing prior to eviction of tenants in public housing projects was valid and that where this is not complied with, the tenant may raise this as a defense in an eviction action. The rationale expressed in *Dickhut v. Norton, supra,* of allowing defenses based on public policy was said to be broad enough to accommodate a defense based on federal public housing regulation. 53 Wis. 2d at 281.

In the cases at bar, unlike either *Dickhut, supra,* or *Housing Authority of City of Milwaukee, supra,* defendants occupied commercial premises under expired leases and refused to accept new leases.

The statutory phrase "out of the transaction or occurrence" that is the subject of plaintiff's claim has been construed in earlier Wisconsin decisions. In *Kuhn v. Sol. Heavenrich Co.* (1902), 115 Wis. 447, 91 N. W. 994, in an action for rent due for business premises, a counterclaim for damages to the tenant's personal property caused by rain and the lessor's failure to repair a broken skylight was held not to arise out of the contract or transaction upon which the plaintiff sued.

In *Malick v. Kellogg* (1903), 118 Wis. 405, 95 N. W. 372, in an eviction suit for failure to pay rent on a farm, it was held that an agreement by the lessor to make certain improvements, which agreement he had breached, was a transaction independent of the lease. The breach was held not to be a defense to the eviction.

We conclude that the matters extrinsic to the leases underlying defendants' counterclaims did not arise from the same transaction or occurrence that is the subject matter of plaintiff's eviction suits—the leases and the wrongful holdover of possession.

In these cases defendants had been tendered new leases which they refused to sign. Thus, the real controversy concerns an alleged rent increase which defendants refused to accept.

Under the above-cited cases and under the provisions of sec. 299.02 (2), Stats., the demurrers to all three counterclaims should have been sustained.

*By the Court.*—The order overruling the demurrer to the first defense is affirmed. The orders overruling the demurrers to the second, third and fourth defenses and to the counterclaims are reversed and causes remanded.