CLARK OIL & REFINING CORPORATION, Plaintiff and Counterdefendant-Appellee, Cross-Appellant, *v.* ERNEST D. BANKS, Defendant and Counterplaintiff-Appellant, Cross-Appellee.

(No. 59551;

First District (2nd Division)—November 12, 1975.

Porcelli & Jorgenson and Rabens, Formusa & Glassman, both of Chicago, for appellant.

William E. Kelly and Patricia A. Brandin, both of Chicago, for appellee.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Defendant, Ernest Banks, brings this appeal following a judgment in favor of plaintiff, Clark Oil & Refining Corporation, on its forcible entry and detainer action for possession of the subject premises. Plaintiff cross-appeals from a judgment in favor of defendant on his counterclaim. The trial court assessed and awarded damages to defendant on his counterclaim in the amount of $500.

Defendant presents four issues for review: whether the trial court erred in (1) striking certain affirmative defenses and a corresponding portion of defendant's counterclaim, (2) allowing plaintiff's motion in limine pertaining to the stricken defenses, (3) directing a verdict for plaintiff on its complaint and entering judgment thereon, and (4) assessing damages on defendant's counterclaim sua sponte, thus depriving defendant of the trial by jury that he demanded and had not waived. By its cross-appeal, plaintiff urges reversal of the judgment entered for defendant on his counterclaim and alleges that the trial court committed error when it (1) failed to strike defendant's counterclaim in its entirety, (2) admitted certain evidence offered by defendant, (3) failed to grant plaintiff's motion for a directed verdict on defendant's counterclaim, and (4) denied plaintiff's post-trial motion. Plaintiff also contends, in the alternative, that if the trial court properly directed a verdict for defendant on his counterclaim, its action in assessing sua sponte the damages sustained by defendant did not constitute reversible error.

The record discloses that plaintiff, a refiner of gasoline and related products, leased the subject premises with a retail gasoline service station situated thereon to defendant under a one-year lease dated January 31, 1972. The parties also entered into a one-year Retail Consignment Agreement, dated April 15, 1971, under which plaintiff contracted to

supply gasoline to defendant. Rental payments based upon the volume of gasoline sold during the previous business day were to be remitted by defendant on a daily basis, except on weekends. Defendant also agreed to remit in the same manner payments for gasoline sold.

Although the lease provided that it could be renewed on a yearly basis, it further provided that it could be terminated by plaintiff "for cause or no cause" at the end of any yearly term upon 30 days' written notice to defendant. In addition, plaintiff could terminate the lease without notice to defendant if defendant failed or refused to pay rent or other monies due under the terms of the consignment agreement.

On December 18, 1972, plaintiff mailed to defendant a notice of termination effective on January 31, 1973. Subsequently on several occasions during the latter part of January, defendant failed to remit monies owing to plaintiff in conformance with the contract. Because of these defaults in payment, plaintiff notified defendant on January 26 that the lease was being terminated immediately. Defendant refused to surrender possession of the premises.

Alleging that defendant's account had an outstanding balance in excess of $8,900, plaintiff brought suit on January 29, 1973, to regain possession of the premises. That suit was dismissed without prejudice after the summons and an alias summons were returned unserved. On March 7, 1973, after the expiration of defendant's lease, plaintiff brought this action. By its complaint, plaintiff sought possession of the premises, but did not pray for monetary relief.

By his answer, defendant entered a general denial to the allegations contained in plaintiff's complaint and asserted the following affirmative defenses: (1) defendant occupied the premises under an unexpired lease, (2) plaintiff's policy was to renew station leases if the tenant conducted a "Clark" operation, (3) plaintiff's operating procedures violated Illinois' antitrust laws, (4) plaintiff's attempted eviction of defendant was in retaliation for defendant's refusal to conspire with plaintiff to violate the antitrust laws, and (5) the legal relationship existing between the parties was not that of landlord and tenant, but either that of joint adventurers or of franchisor and franchisee. Defendant also filed a counterclaim in which he incorporated by reference the allegations contained in his answer and further alleged that plaintiff breached the consignment agreement causing defendant to sustain damages of $20,000.

Plaintiff's motion to strike was granted with respect to the affirmative defenses and corresponding paragraphs of the counterclaim pertaining to the alleged antitrust violations and the legal relationship between the parties.

The jury was discharged upon its inability to reach a verdict, and sub-

sequently, the trial court granted both plaintiff's motion for a directed verdict on its complaint and defendant's motion for a directed verdict on his counterclaim. Upon the evidence presented, the trial court awarded defendant $500 in damages.

In accordance with an order agreed upon by the parties which was entered on September 24, 1974, defendant relinquished possession of the subject premises to plaintiff.

During oral argument, defendant's counsel admitted that issues identical to those presented in the instant case were recently reviewed by this court in *Clark Oil & Refining Corp. v. Thomas*, 25 Ill.App.3d 428, 323 N.E.2d 479. We disagree with counsel's contention that *Thomas* was erroneously decided and find that *Thomas* is controlling on this action with regard to the propriety of the trial court in striking certain affirmative defenses and corresponding paragraphs of the counterclaim.

■■ The principal issue addressed by the court in *Thomas* was whether the affirmative defenses raised by defendant pertaining to alleged violations by plaintiff of Illinois' antitrust laws were properly stricken by the trial court. Here, in disposition of this same issue, we reiterate the pertinent holding in *Thomas*: "[T]he aspects of defendant's answer and counterclaim based on antitrust laws are not germane to the decisive issue of possession. The trial court acted properly in striking the affirmative defenses and counterclaim based on violation of the antitrust laws." (25 Ill.App.3d 428, 433, 323 N.E.2d 479, 482-83; accord, *Clark Oil & Refining Corp. v. Leistikow* (1975), 69 Wis.2d 226, 230 N.W.2d 736.) Because of the summary nature of a forcible entry and detainer action, the holding in *Thomas* is even more compelling when applied to the facts in the instant case. In *Thomas*, Clark Oil rested its right to terminate the lease upon the tenant's failure to pay rent and other monies due. However, in this action plaintiff's claim for possession is predicated solely upon its right to terminate defendant's lease at the end of its term in accordance with the leasing agreement. A tenant who becomes a defendant in a forcible entry and detainer action is not left without a forum within which to present his antitrust claims against his landlord; indeed, defendant is a named plaintiff in a pending antitrust action against Clark Oil in *Ashcraft v. Clark Oil & Refining Corp.*, No. 73 C 566 (N.D. Ill.).

We next consider the correctness of the directed verdict for defendant on his counterclaim and the assessment of damages thereon by the trial court sua sponte. Our initial inquiry, however, must be whether the trial court properly entertained the remainder of defendant's counterclaim pertaining to an alleged breach by plaintiff of the Retail Consignment Agreement. Plaintiff maintains that the trial court should have struck the

entire counterclaim because no allegation contained therein was germane to the limited purpose of a forcible entry and detainer action. We agree with plaintiff's position.

██ Since a forcible entry and detainer action is a statutory proceeding in derogation of the common law, a court entertaining such an action is considered to be a court of special and limited jurisdiction for that proceeding and must comply with the procedure prescribed by statute. (*Menagh v. Hill*, 12 Ill.App.2d 80, 138 N.E.2d 707.) Section 11 of the Forcible Entry and Detainer Act (Ill. Rev. Stat. 1973, ch. 57, par. 11) provides that proceedings brought pursuant to that Act shall be conducted in accordance with the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 1 *et seq.*), except as otherwise provided. One limitation to the applicability of the Civil Practice Act to such proceedings is contained in section 5 of the Forcible Entry and Detainer Act, which provides in pertinent part as follows:

> "The defendant may under a general denial of the allegations of the complaint give in evidence any matter in defense of the action. No matters not germane to the distinctive purpose of the proceeding shall be introduced by joinder, counterclaim or otherwise: Provided, however, that a claim for rent may be joined in the complaint, and judgment obtained for the amount of rent found due." (Ill. Rev. Stat. 1973, ch. 57, par. 5.)

The "distinctive purpose of the proceeding" is limited to an adjudication of the parties' rights to possession of the subject premises, and such proceedings should not be burdened with questions of title or other collateral matters which are not directly related to the issue of possession. (See, *e.g., Germania Federal Savings & Loan Association v. Jacoby*, 23 Ill.App.3d 145, 318 N.E.2d 734; *Reid v. Arceneaux*, 63 Ill.App.2d 113, 211 N.E.2d 24; *Bleck v. Cosgrove*, 32 Ill.App.2d 267, 177 N.E.2d 647.) It is consistent with this section for a defendant in such an action to aver matters by way of defense or counterclaim in refutation of the plaintiff's asserted right to possession. See, *e.g., Clore v. Fredman*, 59 Ill.2d 20, 319 N.E.2d 18 (allegations of retaliatory eviction held germane); *Rosewood Corp. v. Fisher*, 46 Ill.2d 249, 263 N.E.2d 833 (validity and enforceability of installment contract for purchase of realty held proper subjects for consideration).

A development in this area of litigation has recently emerged; a distinction has been drawn between residential and commercial leases for purposes of determining what matters are germane to the limited purpose of a forcible entry and detainer action. In 1972, by a 4-3 decision, our Supreme Court held in *Jack Spring, Inc. v. Little*, 50 Ill.2d 351, 280 N.E.2d 208, that allegations of breaches of express covenants to repair

and an implied warranty of habitability may be asserted by a tenant in a forcible entry and detainer action in which the landlord's claimed right to possession is predicated upon the tenant's nonpayment of rent. However, the court expressly confined its holding to the factual situation presented to it: "the occupancy of multiple dwelling units." (50 Ill.2d 351, 367, 280 N.E.2d 208, 218.) By its holding, the Supreme Court carved out an exception involving residential leases in the multiple-dwelling context from well settled common law and statutory doctrines. Three subsequent cases cited *Little* with approval, but refused to extend its narrow holding to factual situations in which the right to terminate commercial leases was at issue. (*Ing v. Levy*, 26 Ill.App.3d 889, 326 N.E.2d 51; *Clark Oil & Refining Corp. v. Thomas; Germania Federal Savings & Loan Association v. Jacoby.* In *Levy*, the commercial tenant offered to pay all overdue rent if specified repairs were made. The landord responded to this offer by filing a forcible entry and detainer action against the tenant. By way of counterclaim, the tenant requested equitable relief enjoining the attempted forfeiture of the lease, $5,000 as compensatory damages, and $10,000 as punitive damages. In affirming the judgment entered in favor of the landlord awarding possession of the premises and the amount of overdue rent, the appellate court observed that "[n]o Illinois Court has extended the *Little* rule to commercial leases, and since in the case at bar we are reviewing a dispute which arose over a commercial lease, we must apply traditional common-law principles." (26 Ill.App.3d 889, 891-92, 326 N.E.2d 51, 54.) In *Jacoby*, the landlord claimed a superior right to possession of the subject premises since it had served timely notice to the commercial tenant of its desire to not renew the lease at the end of its term. The tenant's answer contained, *inter alia*, a counterclaim for damages allegedly due for the overpayment of rent. Also, after the action was commenced, the tenant raised for the first time objections concerning the condition of the premises. Upon plaintiff's motion, the trial court struck the affirmative defenses and severed the counterclaim, finding that they were not germane to the decisive issue of the right to possession. The appellate court noted that since neither a claim for rent was filed nor was the *Little* rule pertaining to warranties of habitability in residential leases applicable to commercial leases, the action by the trial court was properly taken. 23 Ill.App.3d 145, 147-48, 318 N.E.2d 734, 736.

In the instant case, plaintiff's asserted right to possession of the premises was predicated upon its right to terminate the lease at the end of its term following timely notification to defendant; no monetary relief was sought. By his counterclaim, defendant prayed for other relief in addition to a dismissal of the complaint. (See *Reid v. Arceneaux*.) Under

the circumstances of this case, defendant was not justified in requesting such additional relief and presenting evidence thereon since whether or not plaintiff breached the Retail Consignment Agreement causing damages to defendant was not germane to the only issue properly before the trial court—the respective rights of the parties to possession of the service station. Although Clark Oil could have sought overdue rent and other monies owed by defendant, it did not exercise this option. Rather, plaintiff merely sought possession of the premises. Therefore, no legal theory nor case authority permits defendant to seek damages arising from a collateral incident in a summary proceeding such as a forcible entry and detainer action. As a result, we hold that it was error for the trial court to entertain and consider the remaining paragraphs of defendant's counterclaim, and plaintiff's motion to strike defendant's counterclaim in its entirety should have been granted in toto. Accordingly, that portion of the judgment awarding defendant $500 in damages is reversed.

■■ Even if defendant had the right to file a counterclaim praying for additional relief of this nature, our review of the record uncovers no evidence upon which either the directed verdict for defendant on his counterclaim or the award of damages can stand. As the trial court correctly found, plaintiff justifiably terminated defendant's lease effective January 31, hence, any compensable damages sustained by defendant must necessarily have occurred prior to that date. By way of defense to defendant's counterclaim, plaintiff maintains that it was also justified in terminating the lease on January 26 due to defendant's breach of the consignment agreement. After analyzing the contractual provisions summarized above, we agree with plaintiff. The evidence overwhelmingly shows that defendant was indebted to plaintiff on January 26. Plaintiff's sales representative testified that he unsuccessfully attempted to collect remittances owed by defendant for January 24 and January 25. In addition, plaintiff introduced into evidence testimony and exhibits pertaining to business records regularly compiled by it itemizing the indebtedness owed by defendant. Included in this indebtedness was an amount exceeding $2,500 for unpaid invoices. Although defendant denied being indebted to plaintiff as of January 26, he presented no other evidence to support his contention. Since the record indicates that defendant breached the consignment agreement prior to January 26 by failing to promptly remit monies owing to plaintiff for rent and consigned products, plaintiff was justified in immediately terminating defendant's lease on January 26. Thereafter, plaintiff owed no further obligation to defendant to supply products in accordance with the consignment agreement. Thus, any breach by plaintiff of the consignment agreement which could have possibly resulted in damages to defendant must have occurred, if

at all, prior to January 26. Indeed, most of the evidence relied upon by defendant to support his claim for damages pivots around January 26 as the critical date. Defendant testified that prior to January 26, he "took home" $1,500 per month and pumped an average of 60,000 gallons of gasoline per month. However, after plaintiff stopped supplying him with gasoline, he had to purchase gasoline elsewhere at seven cents per gallon over the current market price. Also, defendant's net profit after January 26 was zero. Defendant's wife testified that beginning in the latter part of January, defendant no longer gave her $350 per week for household expenses.

Although this evidence relied upon by defendant does reveal a marked decrease in his income subsequent to January 26, the record shows that this fact was not caused by a breach by plaintiff of the consignment agreement. A report prepared by defendant included an entry for the delivery of gasoline to his station on January 24; at that time, 2,925 gallons of regular gasoline and 4,425 gallons of premium were delivered. Another report prepared by defendant revealed that on January 25, his inventory contained 3,600 gallons of regular gasoline and 5,986 gallons of premium. Although the volume of remaining gasoline calculated by two of plaintiff's representatives differed slightly from the amounts shown on defendant's report, when viewing the evidence in its aspect most favorable to defendant and comparing it with the previous average sales statistics compiled by defendant, the conclusion becomes inescapable that defendant had an adequate supply of gasoline with which to conduct business on at least January 26, if not later. Consequently, we do not find a breach of the consignment agreement by plaintiff which could have resulted in compensable damages to defendant. Finding no other evidence upon which liability could be imposed on plaintiff, the judgment for defendant on his counterclaim could not stand even if we had held that the counterclaim was properly entertained by the trial court.

In view of the foregoing, we deem it unnecessary to specifically address ourselves to the remaining issues raised by the appeal and the cross-appeal. Accordingly, judgment for plaintiff on his complaint is affirmed, and judgment for defendant on his counterclaim is reversed.

Judgment affirmed in part and reversed in part.

DOWNING, P. J., and LEIGHTON, J., concur.