GENERAL PARKING CORPORATION, Plaintiff-Appellee, *v.* MARTIN A. KIMMEL, Indiv. and d/b/a Van Buren Bookstore, Defendant-Appellant.

First District (1st Division)    No. 79-1289

Opinion filed December 28, 1979.

Adam Bourgeois, of Chicago, for appellant.

Rusnak, Deutsch and Gilbert, Ltd., of Chicago (Michael G. Berland, Stephen M. Dorfman, and Lawrence E. Rissman, of counsel), for appellee.

Mr. JUSTICE McGLOON delivered the opinion of the court:

On May 3, 1979,. General Parking Corporation filed a forcible entry and detainer action against Martin A. Kimmel to recover possession of premises located at 72 West Van Buren Street, Chicago, Illinois. The trial court entered judgment for plaintiff on the pleadings. Defendant appeals.

On appeal, defendant argues that his constitutionally based affirmative defense was sufficient to withstand a judgment on the pleadings and that the trial court therefore erred in refusing to allow a trial on the merits.

We affirm.

Defendant Martin A. Kimmel is an individual doing business as Van Buren Bookstore, an adult bookstore located at 72 West Van Buren Street, Chicago, Illinois. Defendant's uncle Charles Kimmel organized the business in 1960 and operated it until 1972, when Martin Kimmel became the sole proprietor. The premises on which the store was located had been leased since the inception of the business.

Plaintiff General Parking Corporation has owned the premises on which the store is located since 1967 and has leased the premises to the tenants per various three-year lease agreements. The final lease between General Parking and Martin Kimmel expired on April 30, 1979.

Kimmel, however, remained on the premises. Subsequently, on May 3, 1979, General Parking filed a forcible entry and detainer action to regain possession of the premises. Kimmel filed an affirmative defense to this action in which he alleged that General Parking and the city of Chicago entered into a conspiracy to evict him, thereby depriving him of his constitutional rights.

Shortly thereafter, Kimmel filed suit against General Parking and the city of Chicago in the United States District Court for the Northern District of Illinois, Eastern Division, seeking to enjoin General Parking from pursuing the forcible entry and detainer action because of an alleged conspiracy between General Parking and the city to evict defendant and deprive him of his constitutional rights. On May 25, 1979, the district court held a hearing to determine the propriety of issuing a preliminary injunction. Kimmel and General Parking each presented one sworn witness who was subject to cross-examination. After hearing the evidence, the district court made specific findings that General Parking and the city did not conspire to evict Kimmel and did not violate Kimmel's constitutional rights. The court also determined that the lease between General Parking and Kimmel expired on April 30, 1979, and that General Parking should not be enjoined from proceeding with its forcible entry and detainer action. Kimmel's motion for a temporary restraining order and permanent injunction was denied and his complaint was dismissed with prejudice. On June 20, 1979, the district court amended its order and dismissed, without prejudice, that portion of the complaint in which Kimmel sought damages and costs.

Subsequently, on July 11, 1979, the circuit court of Cook County granted General Parking's motion for judgment on the pleadings in the forcible entry and detainer action.

■■ On appeal, Kimmel argues that his constitutionally based affirmative defense was sufficient to withstand a judgment on the pleadings. While it is true that circuit courts have jurisdiction over all justiciable matters (Ill. Const. 1970, art. VI, §9), the defenses which may be raised in a forcible

entry and detainer action are limited. Section 5 of the Forcible Entry and Detainer Act provides, in part, that "[n]o matters not germane to the distinctive purpose of the proceeding shall be introduced by joinder, counterclaim, or otherwise * * *." (Ill. Rev. Stat. 1977, ch. 57, par. 5.) The general purpose of a forcible entry and detainer action is to adjudicate the parties' right to possession of the premises, and therefore such proceedings should not be burdened with matters not directly related to the issue of possession. (See, e.g., *Clark Oil & Refining Corp. v. Banks* (1975), 34 Ill. App. 3d 67, 339 N.E.2d 283; *Clark Oil & Refining Corp. v. Thomas* (1974), 25 Ill. App. 3d 428, 323 N.E.2d 479; *Bleck v. Cosgrove* (1961), 32 Ill. App. 2d 267, 177 N.E.2d 647.) The Illinois Supreme Court has defined "germane" as meaning, "closely allied; closely related, closely connected; appropriate." *Rosewood Corp. v. Fisher* (1970), 46 Ill. 2d 249, 257, 263 N.E.2d 833, 838.

In the instant case, General Parking's suit was based upon Kimmel's unlawful possession of the premises after termination of the lease. However, Kimmel's affirmative defense deals with a wide range of matters which took place over an extended period of time. Included within the scope of his defense were allegations such as the formation of a conspiracy in 1977 between the city of Chicago and other persons to eliminate all adult bookstores in Chicago; the formation and actions of teams of fire and building inspectors who were instructed by the city to find violations of the Chicago Building Code; the purposeful harassment and intimidation of landlords by the inspectors; the use of the building and fire codes to eliminate all adult bookstores within the city in violation of the store owner's constitutional rights; and the participation by General Parking in the alleged conspiracy. Presumably, these and other related allegations asserted in the defense would have been addressed by Kimmel had he been allowed to present his affirmative defense. Proof of these matters would have undoubtedly been lengthy and complex.

■■ ■ We find that the matters asserted by Kimmel in his affirmative defense were neither germane, relevant, nor related to the question of possession which was at issue in the forcible entry and detainer action. Kimmel's assertions had no bearing on the question of whether he had a property interest in the premises after his lease expired. In fact, Kimmel admits in his brief that the lease expired on April 30, 1979. A tenant who remains in possession after his lease expires becomes a tenant at sufferance whose possession can be put to an end whenever the landlord wishes. (*Bradley v. Gallagher* (1973), 14 Ill. App. 3d 652, 303 N.E.2d 251.) Therefore, Kimmel had no property interests which he could have asserted in his defense.

■ Furthermore, the lease between General Parking and Kimmel is commercial in nature. Matters which are considered germane to the issue

of possession are construed more strictly in actions involving commercial leases. (*Clark Oil & Refining Corp. v. Banks* (1975), 34 Ill. App. 3d 67, 339 N.E.2d 283.) While it is true that our supreme court has gradually expanded the category of defenses which may be entertained in a forcible entry and detainer action (*Jack Spring, Inc. v. Little* (1972), 50 Ill. 2d 351, 280 N.E.2d 208), it has expressly confined its holding to facts presented to it; occupancy of multiple dwelling units. (50 Ill. 2d 351, 367, 280 N.E.2d 208, 218.) Later cases have refused to extend the narrow holding of *Jack Spring* to commercial leases. *Clark Oil & Refining Corp. v. Banks* (1975), 34 Ill. App. 3d 67, 339 N.E.2d 283, citing *Ing v. Levy* (1975), 26 Ill. App. 3d 889, 326 N.E.2d 51, and *Germania Federal Savings & Loan Association v. Jacoby* (1974), 23 Ill. App. 3d 145, 318 N.E.2d 734.

Kimmel also alleged in paragraph 23 of his affirmative defense that the action brought by General Parking was tantamount to a retaliatory eviction. He argues that General Parking filed the forcible entry and detainer action in retaliation for Kimmel's exercise of his constitutional rights and that this and other acts complained of in his defense are against the public policy of Illinois as set forth in section 1 of "An Act to protect the rights of tenants to complain of violations of governmental regulations" (Ill. Rev. Stat. 1977, ch. 80, par. 71). This statute is as follows:

"§1. It is declared to be against the public policy of the State for a landlord to terminate or refuse to renew a lease or tenancy of property used as a residence on the ground that the tenant has complained to any governmental authority of a bona fide violation of any applicable building code, health ordinance, or similar regulation. Any provision in any lease, or any agreement or understanding purporting to permit the landlord to terminate or refuse to renew a lease or tenancy for such reason is void."

■ In determining the intent of the legislature, we look to the language of the statute; if the language is clear and unambiguous, a court's proper function is to enforce the statute as enacted. (*People ex rel. Gibson v. Cannon* (1976), 65 Ill. 2d 366, 357 N.E.2d 1180.) The language of this statute clearly and unambiguously prohibits only termination or nonrenewal of residential leases in cases in which the action was taken in retaliation for the tenant's complaint to governmental authorities regarding violations of building codes, health ordinances, or similar regulations. (*Clore v. Fredman* (1974), 59 Ill. 2d 20, 319 N.E.2d 18.) Therefore, its application should not be expanded to cases such as this where the lease is commercial, not residential, in nature and where the tenant made no complaints to authorities concerning code violations.

■ Furthermore, we note that Kimmel was precluded from presenting certain portions of his affirmative defense by the doctrine of collateral estoppel. Under this doctrine, a judgment on the merits of a prior action is

conclusive as to issues in a subsequent action between the parties if those issues were actually litigated and determined in the prior action. (*People v. Haran* (1963), 27 Ill. 2d 229, 188 N.E.2d 707; *Hoffman v. Hoffman* (1928), 330 Ill. 413, 161 N.E. 723.) Even if the subsequent action involves a different cause of action, collateral estoppel will apply to prevent "a party from raising issues which were essential to the former litigation, and which were actually decided therein." (*Turzynski v. Liebert* (1976), 39 Ill. App. 3d 87, 90, 350 N.E.2d 76, 79.) Our supreme court in *Illinois State Chamber of Commerce v. Pollution Control Board* (1979), 78 Ill. 2d 1, 398 N.E.2d 9 (quoting from *Riley v. Unknown Owners* (1975), 25 Ill. App. 3d 895, 324 N.E.2d 78) stated:

> " ' * * * the only pertinent questions for the utilization of collateral estoppel are whether the issue decided in the prior adjudication is identical with the one presented in the suit in question, whether there had been a final judgment on the merits, and whether the party against whom estoppel is asserted is a party or in privity with a party to the prior adjudication.' "

Kimmel, the party against whom estoppel was asserted, alleged in his district court suit that he was evicted pursuant to civil conspiracy between General Parking and the city of Chicago and that his constitutional rights were thereby violated. He sought an injunction restraining General Parking from prosecuting the forcible entry and detainer action. The issues presented to the district court for determination were whether a conspiracy existed between General Parking and the city to evict Kimmel and whether Kimmel's constitutional rights had been violated. These same issues were also raised in Kimmel's affirmative defense to the forcible entry and detainer action. After hearing the evidence, the district court made specific findings that (1) no civil conspiracy existed between General Parking and the city of Chicago to secure the eviction of Kimmel from the premises; (2) that no evidence was presented which indicated that Kimmel's constitutional rights had been violated; (3) that the written lease commenced on May 1, 1975, and ended April 30, 1979; and (4) that there was no reason for enjoining General Parking from proceeding with the forcible entry and detainer action. The court then dismissed with prejudice that portion of Kimmel's complaint in which he sought injunctive relief.

A dismissal with prejudice operates as an adjudication on the merits. (35B C.J.S. *Federal Civil Procedure* §871 (1975).) Also the effect of such an involuntary dismissal is set forth in Rule 41(b) of the Federal Rules of Civil Procedure. This rule provides as follows:

> "(b) Involuntary Dismissal: Effect Thereof * * *. After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without

waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court rendered judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). *Unless the court in its order for dismissal otherwise specified, a dismissal under this subdivision and any dismissal not provided for in this rule*, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, *operates as an adjudication upon the merits*." (Emphasis added.) (28 U.S.C. Rule 41(b) (1976).)

In light of the above, it is apparent that the order of dismissal entered by the district court operated as an adjudication on the merits of Kimmel's suit.

■■ Furthermore, we note that Illinois courts may recognize Federal court judgments. A final judgment on the merits rendered by a Federal court is binding and conclusive on Illinois courts when, in subsequent State litigation, the same subject matter and parties are involved. (*People v. Borchers* (1977), 67 Ill. 2d 578, 367 N.E.2d 955.) General Parking and Kimmel were parties to both actions. As stated previously, the issue of whether a conspiracy existed between General Parking and the city to evict Kimmel was presented in both the Federal and State actions, as was the issue of whether Kimmel had been deprived of certain constitutional rights. The Federal district court made specific findings against Kimmel on the merits of the case. Therefore, Kimmel was estopped from asserting these matters in his affirmative defense to the forcible entry and detainer action, and the circuit court properly considered and followed the judgment of the district court.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County and dissolve the stay of execution.

Judgment affirmed.

O'CONNOR and CAMPBELL, JJ., concur.