ARNOLD C. DIDIER *et al.*, Plaintiffs-Appellants, *v.* JAMES W. JONES *et al.*, Defendants-Appellees.

Second District   No. 76-543

Opinion filed June 15, 1978.—Rehearing denied July 17, 1978.

Edward W. Barrett and Bruce M. Friedman, both of Crowley, Barrett & Karaba, of Chicago, for appellants.

Hubbard, Hubbard, O'Brien & Hall and Wildman, Harrold, Allen & Dixon, both of Chicago, and Ellis E. Fuqua and Bernard Wysocki, both of Fuqua, Winter & Associates, and Brydges, Riseborough & Morris, both of Waukegan, for appellees.

Mr. JUSTICE WOODWARD delivered the opinion of the court:

This suit is the result of a multivehicle collision in which plaintiff, Arnold Didier (Didier) was injured; he seeks to recover damages for those injuries, and plaintiff, Virginia Didier, his wife, seeks to recover for loss of consortium.

The collision occurred on Route 21 (also known as Milwaukee Avenue), between County Line Road and Deerfield Road, in Lake County. In the area of the occurrence Route 21 is a four-lane highway running in a generally north-south direction, two lanes in each direction. The speed limit on Route 21 is 55 m.p.h. in the area of the occurrence.

On the west side of Route 21 in the area of the occurrence, a housing

project known as Inverrary Quadrominiums was under construction. The Inverrary site was owned by defendant, R. H. Markus & Associates, Inc. (Markus); it was also acting as a general contractor in charge of construction activities at the site. The sole means of ingress and egress to the Inverrary site was by an access road which was under construction on the date of the occurrence. This access road ran in a westerly direction from the point where it intersected Route 21.

The access road was being constructed by defendant, Skokie Valley Asphalt Co. (Skokie Valley). On the date of the occurrence, employees of Skokie Valley were engaged in the laying of a gravel or stone subbase on the access road. Gravel used in the laying of this subbase was being delivered to the site in large semi-trucks with dump trailers, owned by or leased to defendant, Terra Cotta Truck Service, Inc. (Terra Cotta). Defendant, Russell J. Haderly (Haderly) drove one of the trucks for Terra Cotta; another one of the Terra Cotta trucks was leased from defendant, Bruce Bates, and was driven by defendant, James W. Jones (Jones).

On the east side of Route 21 across from the Inverrary site was a building known as the Sale Barn, which housed a retail antique business. Ingress and egress to the Sale Barn was via a driveway ("the south driveway") which intersected into Route 21 directly across from the access road to the Inverrary site. One could also exit from the parking lot of the Sale Barn by means of another driveway ("the north driveway") which intersected Route 21 approximately 80 to 90 feet north of the south driveway.

Prior to and at the time of the occurrence, Didier owned and operated a scavenger business. In conducting this business he owned and was driving at the time of the occurrence in question, a Diamond-T truck manufactured by defendant, White Motors Corp. (White). The collision occurred during the late morning hours of November 29, 1972. The weather was cool but dry; visibility to the south from the area of the occurrence was approximately one half mile and to the north approximately one quarter mile. The road was in good repair and generally flat and straight, and free from snow and ice.

Prior to the jury trial in this case, the trial judge on the motion of White struck counts XI and XII of the amended complaint and dismissed White as a party defendant. Defendants, Bruce Bates and Marlis Construction Co. (the sales and advertising corporation of Markus) were also dismissed out of the case. The jury rendered a verdict against plaintiffs and in favor of all remaining defendants. In the special interrogatory submitted to it, the jury found that Didier was not free from contributory negligence. The trial judge entered judgment on the jury verdict and denied plaintiffs' post-trial motion. Plaintiffs appeal from the order dismissing White as a

party defendant, and from the judgment for defendants entered on the verdict and the order denying plaintiffs' post-trial motion.

The occurrence testimony presented at trial may be summarized as hereafter set forth. Didier stated that he was operating his Diamond-T garbage truck north on Route 21, in the far right hand lane; he was traveling at a rate of speed of between 40 and 45 m.p.h. As he approached the Inverrary site he saw the truck operated by Haderly in the south driveway of the Sale Barn with its tail end close to the edge of Route 21; he first observed Haderly's truck when he was about 50 feet south of the south driveway. He looked to his left and observed a car in the inside northbound lane next to his truck. He then looked again toward the south driveway and saw that Haderly's truck had begun to move westerly. Immediately he hit his brakes but as he did so the tail end of Haderly's truck crashed into the right side of the cab of his truck. Didier had no recollection of any subsequent events until he woke up in the hospital.

In an evidence deposition, read to the jury at trial, Mrs. Lillian Naussner testified that at the time of the occurrence she was driving a black Buick Le Sabre, northbound in the inner lane of Route 21; she estimated her driving speed to be 45 m.p.h.; she observed Didier's truck ahead of her in the right hand northbound lane. As her car began to overtake Didier's truck, she heard and felt an impact at the right rear of her car. The impact knocked her car to the right and out of control, through a wooden fence and into a tree. Prior to the impact she did not observe any vehicles entering into the northbound lanes of Route 21 from the west side of Route 21. Following the accident, she left her car and returned to Route 21 where she observed a truck facing north on Route 21 north of where the impact took place. On cross-examination she testified that the damage to the garbage truck was on the driver's side.

In an evidence deposition, also read to the jury at trial, James Oehmke testified that at the time of the occurrence he was in his car proceeding to exit on to Route 21 through the south driveway of the Sale Barn. At this time Haderly's truck pulled directly from the west side of Route 21 to the east side, into the parking lot. The witness' car was facing west and the truck was facing east; the vehicles were about 15 feet apart, and the truck blocked the witness' view to the south on Route 21. The tail end of the truck was about six or seven feet into the parking lot from the edge of Route 21. The witness stated that subsequently the truck backed on to Route 21; the witness then heard a crash and observed a garbage truck, smashed in front pass by him. He did not actually see Haderly's truck strike the garbage truck. He saw Didier's truck stop, straddling the middle two lanes and observed Didier lying on the pavement, to the left of his truck. The witness observed damage to the right side of Didier's

truck. He also at this point observed a black Buick facing north on a grassy area on the east side of Route 21. The witness did not observe any other truck in the area.

Defendant Jones testified that at the time of the occurrence he had just delivered a load of gravel to the Inverrary site. He observed another Terra Cotta truck in the driveway on the east side of Route 21 and recognized the driver as Haderly. Jones drove his truck directly across the two south bound lanes of Route 21 and made a 90 degree turn north into the northbound lane, traveling at about 5 to 10 m.p.h. As his truck entered the extreme right hand northbound lane he observed a black car proceeding north veer into the southbound lane, then enter the northbound lane in front of his truck. He heard a noise and then felt an impact. He left his truck and observed Didier's garbage truck to the left rear of his truck.

Defendant Haderly testified that at the time of the occurrence he had arrived at the Inverrary site with a load of gravel. He pulled into the driveway on the east side of Route 21 because Jones already had his truck on the job site. The tail end of his truck was approximately 15 feet from the pavement of Route 21. He left his truck and walked to the west side of Route 21. When he saw Jones' truck leaving the job site, he returned to his truck. He was in the cab of his truck for several seconds and then heard a collision; his truck never moved from its parked position. Haderly left his truck to investigate; he observed Didier's truck behind Jones' truck in the northbound lanes of Route 21 and saw Didier lying on the pavement.

Frank C. Bojniewicz, employed as a road foreman by Skokie Valley at the Inverrary site, testified that as Jones' truck drove across Route 21, he observed a black car going around the truck, in the inner northbound lane. As the car went around the truck, a garbage truck coming from the south hit Jones' truck in the rear. The witness estimated Jones' speed as approximately 15 to 20 m.p.h.; he described the speed of the garbage truck as "pretty fast."

Don Knodel, employed as a laborer by Skokie Valley on the Inverrary project testified that among his duties on the date of the occurrence was to flag the trucks into the project; that he was proceeding to Route 21 to direct Haderly's truck to back across Route 21 from the driveway on the east side of Route 21. Jones' truck had left the project site and was in the far right northbound lane, moving at approximately 25 to 30 m.p.h. The witness observed a garbage truck pass in front of him moving north in the same lane as Jones' truck. There was also a black or dark colored car traveling in the inner northbound lane. The car was traveling at a high rate of speed and was overtaking Jones' truck; the garbage truck was also traveling at a high rate of speed. As the garbage truck approached Jones' truck he saw the garbage truck attempt to swerve and get into the inner

lane; at that time it struck the rear end of Jones' truck. The witness did not observe Haderly's truck move at any time; however, he stated that he was watching the other vehicles at the time of the collision.

The first issue presented by plaintiffs is whether the jury verdict was against the manifest weight of the evidence and whether the trial judge erred in denying plaintiffs' post-trial motion. Plaintiffs maintain that the jury's verdict and the answer to the special interrogatory can be sustained only if it is determined that the first collision described by Didier between the tail end of Haderly's truck and the right side of Didier's truck, did not occur, and that the manifest weight of the physical evidence and the testimony admitted at trial clearly and overwhelmingly demonstrates that this collision did in fact occur.

■■ Verdicts and judgments are not considered against the manifest weight of the evidence unless a conclusion opposite to that reached by the jury is clearly evident or the jury's verdict is palpably erroneous. (*Haas v. Woodard* (1965), 61 Ill. App. 2d 378, 384, 209 N.E.2d 864, 867.) "Manifest weight" as applied in determining whether a verdict or judgment is against the manifest weight of the evidence is that weight which is clearly evident, plain and indisputable. *Haas v. Woodard.*

In the case before us, the parties to this action present widely conflicting versions as to how this collision occurred. It is well settled that it is the function of the jury to resolve controverted issues of fact (*Ruggiero v. Public Taxi Service, Inc.* (1973), 16 Ill. App. 3d 754, 306 N.E.2d 567), to determine the credibility of the witnesses and the weight, if any, that should be accorded their testimony. (*Pfister v. West* (1964), 53 Ill. App. 2d 305, 203 N.E.2d 35.) Where there is a conflict in the testimony, a reviewing court may not substitute its judgment for that of the jury in passing on the weight of the evidence and on the credibility of the witnesses. (*E. A. Meyer Construction Co. v. Drobnick* (1964), 49 Ill. App. 2d 51, 199 N.E.2d 447.) A verdict may not be set aside merely because the jury could have determined the credibility of the witnesses differently or drawn different inferences of fact, and where credible evidence supports the verdict, the court may not say that the conclusions other than the ones drawn by the jury are more reasonable. *McCottrell v. Benson* (1961), 32 Ill. App. 2d 367, 178 N.E.2d 144.

Applying these statements of law to the record before us we conclude that plaintiffs' contention has no merit. Plaintiffs attack the credibility of the defense witnesses by pointing to various inconsistencies in their testimony and the fact that plaintiffs' occurrence witnesses were disinterested strangers while defense occurrence witnesses were either defendants or their employees. We can only observe that the interests of the various witnesses in this case were disclosed to the jury and that the instances of inconsistency in the testimony at trial were readily apparent,

and we reiterate that it is the function of the jury to judge the credibility of the witnesses and to determine the facts. We are of the opinion that there was sufficient clear, competent evidence in the record to support the finding of the jury in favor of the defendants.

■■ Accordingly, we hold that neither the jury verdict for the defendants and against the plaintiffs, nor the answer to the special interrogatory finding that Didier was not free from contributory negligence is against the manifest weight of the evidence, and the denial of plaintiffs' post-trial motion did not constitute error.

■■ Next, plaintiffs contend that the jury verdict was the result of the admission of inflammable, prejudicial and irrelevant evidence. Plaintiffs assert that defendants conceded both during pretrial discovery and during the course of the trial that there was no evidence that Didier was intoxicated at the time of the accident. Apparently the parties agreed that no evidence of Didier's alcoholic intake would be introduced to show that Didier was intoxicated immediately prior to the occurrence; however, it was understood that defendants could introduce evidence to establish that the mental injuries and deterioration suffered by Didier were caused by his repeated use of alcohol and were not the result of the collision in this case. Plaintiffs contend, however, that defendants repeatedly introduced evidence of plaintiff's alcoholism for the sole purpose of influencing the jury to conclude that Didier was intoxicated at the time of the collision. The record reflects that while alcohol-related testimony was admitted into evidence over plaintiffs' objection, the trial court was careful to ascertain that the testimony was offered to show that alcoholism caused Didier's mental injuries and not for the purpose of showing any intoxication on the part of Didier at the time of the occurrence; the jury was cautioned to consider such evidence for the former purpose only. While plaintiffs' objection to such a reference by defense counsel in closing argument was overruled, in light of the proceeding admonishments to the jury, we cannot say that the plaintiffs were unduly prejudiced by the remark. See *Warp v. Whitmore* (1970), 123 Ill. App. 2d 157, 260 N.E.2d 45.

Finally, plaintiffs contend that the trial court erred in dismissing the action as to defendant White, the manufacturer of the truck which Didier was driving at the time of the collision. Counts XI and XII of the amended complaint were directed solely against White; count XI sought recovery against White for defective design of the truck under the doctrine of strict liability in tort; count XII sought recovery against White on the theory of negligent design and manufacture. On White's motion prior to trial, the trial court struck and dismissed both counts for failure to state a cause of action. Plaintiffs contend however, that the trial court's order striking

counts XI and XII was solely and erroneously predicated on a rejection of the "secondary collision" or "crash-worthiness" doctrine.

Specifically, count XI alleged that at the time the truck left the control of White, it was in an unreasonably dangerous and defective condition for the reason that the cab portion of the truck was designed and constructed so as to be unable to withstand the impact of collisions which could be reasonably anticipated by White and which normally occur in the ordinary operation of such trucks and that the collision occurred while Didier was operating the truck in the manner for which it was customarily intended. However, count XI fails to allege wherein the design or construction of the cab portion of the truck was dangerous or defective. Without this information we are unable to determine whether the secondary collision doctrine is applicable here.

Count XII alleged that White was guilty of one or more of the following negligent acts:

"(a) It manufactured, sold, and distributed to the general public trucks which were dangerous and defective.

(b) It manufactured, sold and distributed to the public trucks which were improperly designed and constructed.

(c) It failed to warn those using its trucks, including Plaintiff, that the cabs thereof were unsafe and would not withstand the impact of collisions of the type which could reasonably be anticipated by White and which ordinarily occur in the normal operation of its trucks.

(d) It failed to properly or adequately test the truck, and the cab thereof, to ascertain whether the same were reasonably safe for the purposes for which they were manufactured."

■■ We agree with the trial court that the allegations contained in each of these counts are simply conclusions, unsupported by any factual allegations, and as such are insufficient to state a cause of action in either strict liability or in negligent design and manufacture. Additionally, the finding of the jury of contributory negligence on the part of Didier bars recovery under count XII.

For all the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

RECHENMACHER and GUILD, JJ., concur.