AMERICAN NATIONAL BANK & TRUST COMPANY OF CHICAGO,
Trustee, *et al.*, Plaintiffs-Appellants, *v.* CONTINENTAL CASUALTY
COMPANY *et al.*, Defendants-Appellees.

First District (4th Division)    No. 81-57

Opinion filed March 25, 1982.—Rehearing denied May 6, 1982.

Paul J. Cronin, of Chicago, for appellants.

Daniel Nagle, of Chicago, for appellees M. L. Ensminger Company and John B. Schreiber, Sr.

Clausen, Miller, Gorman, Caffrey & Witous, P. C., of Chicago (James T. Ferrini, William J. Schaefle, Elizabeth Pendzich, and Robert H. Mittelman, of counsel), for appellee Continental Casualty Company.

JUSTICE JIGANTI delivered the opinion of the court:

The plaintiffs in this cause are American National Bank & Trust Company of Chicago (American National) and the Shore Heights Village Partnership (Shore Heights). American National, as a land trustee, was the owner of a 168-unit apartment complex in Kendall County, near Oswego, Illinois. Shore Heights, the beneficiary of the trust, is a limited partnership with Kenneth Ringbloom and American Contractors, Inc., as the general partners. A fire on February 4, 1976, caused near total destruction of a 24-unit building in the complex.

Events stemming from the aftermath of the fire prompted this action against the defendants, Continental Casualty Company (Continental) and M. L. Ensminger Company, Inc. (Ensminger). Continental insured the property for rental loss due to necessary untenantability as a result of the fire. Rental loss coverage was limited to one year. Ensminger contracted with the plaintiffs to repair the damaged property.

Continental paid the plaintiffs for loss of rent covering a 10-month period. The plaintiffs brought this action against Continental for loss of rent for an additional two months. The trial court directed the verdict in favor of Continental at the conclusion of the plaintiffs' case. The complaint against Continental also contains a count alleging that Continental interfered with the contractual relationship between the plaintiffs and Ensminger. The trial court dismissed that count prior to trial. The plaintiffs appeal both the directed verdict and the dismissal.

The plaintiffs' action against Ensminger alleges that Ensminger breached its contract by failing to complete repairs within the 4-month period provided in the contract. There are also allegations that the repairs performed by Ensminger were done negligently and improperly. The plaintiffs allege that as a result of Ensminger's conduct the building was totally uninhabitable through February 1977, a year after the fire, and partially uninhabitable through December 1977, resulting in a rental loss of $18,000. The plaintiffs expended $15,000 to complete the repairs. The trial court directed the verdict in favor of Ensminger and against the plaintiffs at the conclusion of the plaintiffs' case. The plaintiffs appeal from the directed verdict. The particular details of each issue will be related as they are considered.

The plaintiffs complain that the court was in error in directing the verdict in favor of Continental because there existed a question of fact which should properly have been brought before the jury. The contract of insurance between the plaintiffs and Continental provided that the coverage for rental loss due to necessary untenantability as a result of the fire damage to the insured property was limited to "that period of time only, commencing with the date of the damage or destruction * * * as would be required *with the exercise of due diligence and dispatch* to rebuild, repair or replace the damaged or destroyed property," but not exceeding 12 months. (Emphasis added.) Kenneth Ringbloom, the plaintiffs' representative, on the recommendation of a claims adjuster for Continental, signed a contract with Ensminger on February 11, 1976, seven days after the fire. The contract provided that the restoration was to be completed "in accordance with the terms and conditions of the policy of insurance in force." Ensminger was to receive the insurance proceeds other than the coverage for rent. The work was to be completed "in a time frame of four months." Ringbloom, who owned all the stock in American Contractors, Inc., testified that four months seemed reasonable if he had done the work. The agent for Ensminger testified that at the time the work was contracted, he considered four months reasonable. He also testified as to problems with his subcontractors. The work was not completed within four months. Continental made rental loss payments for a 10-month period ending on December 4, 1976. Continental claims that the property was ready for occupancy by October 1976, and that only some touch-up work remained to be done. It is Continental's contention that any delay beyond November 1976 was Ensminger's fault and further that the difficulty in renting the building was because of slow market conditions. Continental also contends that the apartments were in fact rented in October 1976.

■■ We do not believe that the evidence, when viewed most favorably to the plaintiffs, so overwhelmingly favored Continental that no contrary verdict could stand. Consequently, the court erred in directing the verdict in favor of Continental. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) The issue is whether the plaintiffs acted with due diligence and dispatch in repairing the damage to the property. The property was not in fact repaired within four months. The testimony of Ringbloom and Ensminger's agent when they entered into that contract as to what was reasonable is certainly a question to be considered by the trier of fact on the issue of plaintiffs' diligence but was not conclusive as is suggested by Continental. There was other evidence bearing on that issue. The contract to repair was made with Ensminger, a contractor recommended by Continental. That contract was made within a week after the

fire. Once the contract had been let to an independent contractor, there was little that the plaintiffs could do to control the work. The jury would be instructed to consider the evidence in the light of their own observations and experiences in the affairs of life. (Illinois Pattern Jury Instructions, Civil, No. 1.04 (2d ed. 1971).) The disparity between the times within which construction is scheduled to be done and is in fact done is part of the experience in life of most people. The jury could consider those experiences in determining whether or not the plaintiffs had acted with due diligence in rebuilding and repairing the building.

Continental claimed as a defense that the property was rented in October 1976. Continental points to the testimony of the manager of the plaintiffs' building, Philip Poninski, who said in a somewhat confused bit of testimony on cross-examination while looking at an exhibit that 14 units were rented in December 1976. However, Poninski later testified far more clearly that he examined the units at the end of January 1977, and none of them were occupied. Further, he explained that the exhibit to which he had been referring when he testified that the units were rented showed that leases had been signed and that the money received was either an advance rental payment or a security deposit. This testimony should be evaluated by the trier of fact, the jury. The directed verdict in favor of Continental at the conclusion of the plaintiffs' case is reversed and the cause is remanded.

■■ The plaintiffs' claim against Ensminger is twofold. They alleged that Ensminger failed to repair and restore the property within the four-month time frame provided for in the contract and also that the work was negligently done. The plaintiffs claim that they were damaged because they had to redo and complete many of the repairs with their own money and further that they lost rent. Ensminger responds that time was never of the essence of the contract so that the building did not have to be completed within four months. Even if time is not of the essence the contract must be performed within a reasonable time. (3A Corbin, Contracts §720, at 377 (1960).) What constituted a reasonable time was a question of fact for the jury.

Ensminger also makes the argument that the plaintiffs cannot prove that they were damaged because they had received 10 months' rent from the proceeds of the fire insurance policy even though the building was occupied within that 10-month period. We indicated before in considering a similar argument by Continental that there was evidence that none of the units were occupied at the end of January 1977. Further, on February 1, 1977, a compression fitting on a pipe under one of the vanities which had been installed by Ensminger disconnected, causing water to flood that unit and leak downstairs flooding three more apartments on the first floor. Three weeks later, as a result of the deterioration of the drywall

caused by that leaking water, the ceilings of several of the downstairs apartments bowed and one of the ceilings collapsed. Although Ensminger claims that the plaintiffs failed to show that it was responsible for the water damage, the record shows that on February 1, 1977, Ensminger was in control of the property. Ringbloom testified that he had a conversation with a representative from Ensminger and that they discussed the repairs to be made because of the water damage. Ringbloom further testified that the representative said he would finish the drywall as per the contract. All of this evidence on the issue of whether the plaintiffs sustained damage was for the jury to consider.

The plaintiffs' final contention is that the trial court erred in striking count VI of the complaint for failure to state a cause of action. Essentially, count VI alleged that Continental intentionally interfered with the plaintiffs' contract with Ensminger by paying the property loss proceeds of its insurance contract directly to Ensminger in violation of the loss payable clause of its insurance contract. That clause requires adjustment with and payment to its named insured, American National. The plaintiffs claim that as a result of this intentional interference they lost the power of withholding the insurance proceeds as a means of enforcing Ensminger's completion of its contract. Count VI thus sought consequential damages in the amount of the rental loss beyond the 12-month period of coverage extended by Continental and punitive damages due to the intentionally tortious nature of Continental's conduct.

■■ The elements of the tort of intentional interference with contractual relationships are: (1) the existence of a valid and enforceable contract; (2) the defendant's knowledge of the existing contract; (3) intentional and malicious inducement of the breach; (4) the subsequent breach by the third person due to the defendant's wrongful conduct; and (5) damage to the plaintiff. (*Bergfeld v. Stork* (1972), 7 Ill. App. 3d 486, 288 N.E.2d 15.) Although count VI alleges that Continental committed intentional acts which "deliberately interfered" with the plaintiffs' rights under the contract with Ensminger, there is no allegation that these acts were intended to or did in fact "induce" Ensminger to breach the contract. Since the essential element of inducement is not alleged, we believe that the trial court properly dismissed count VI. See *Bergfeld v. Stork.*

■■ The plaintiffs correctly assert that Continental's motion to dismiss count VI alleged as its sole basis the theory that a policyholder has no cause of action in tort against its insurer for the intentional interference with contractual relationships. It should be noted that Continental does not make this argument on appeal. The plaintiffs argue that had Continental challenged count VI on the basis that it failed to allege inducement, the plaintiffs would have had ample opportunity to amend count VI to properly set forth this element. We are sympathetic to this argument and

therefore remand count VI to the trial court with directions to allow the plaintiffs leave to amend. For the foregoing reasons, the judgment of the circuit court is reversed and remanded with directions.

Reversed and remanded.

JOHNSON, P. J., and ROMITI, J., concur.