PAUL GABRENAS, Plaintiff-Appellee, *v.* R. D. WERNER COMPANY, INC., Defendant-Appellant.

First District (4th Division)   No. 82—967

Opinion filed June 30, 1983.

Willis R. Tribler, Thomas A. Kiepura, and James V. Marcanti, all of Chicago (Haskell & Perrin, of counsel), for appellant.

Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago (James T. Ferrini, Jeffrey J. Asperger, and Lisa D. Marco, of counsel), for appellee.

JUSTICE LINN delivered the opinion of the court:

Plaintiff, Paul Gabrenas, brought a tort action in strict liability against defendant, R. D. Werner Company, Inc., seeking to recover damages for injuries caused by a defectively designed ladder stabilizer that was designed, manufactured, and sold by defendant. Following a jury trial in the circuit court of Cook County, a verdict for plaintiff in the amount of $89,292.96 was returned and judgment was entered thereon. Defendant appeals, arguing that (1) the trial judge erred in permitting plaintiff to present testimony during rebuttal that did not in fact rebut testimony of any defense witnesses but did present a new theory concerning the defect in the ladder stabilizer, and (2) the verdict was contrary to the manifest weight of the evidence.

We affirm.

FACTS

Plaintiff worked as a janitor in the building where he lived in La-Grange, Illinois. He purchased an R. D. Werner aluminum extension ladder in 1968. In 1970, he purchased a Model 75 Mark I Sta-Safe Stand-Off ladder stabilizer, which was designed, manufactured, and sold by defendant. He assembled the stabilizer, and never took it apart. He used the ladder with the stabilizer twice a year to install and remove window screens.

On June 18, 1974, plaintiff attached the stabilizer to the ladder and installed 34 to 36 window screens. After a dinner break he went to the courtway of his building to install two remaining screens. He placed the ladder against the building with the base five feet away on ground that was soft on the surface but hard just beneath the surface. Two feet to the right was a wall perpendicular to the wall against which the ladder was leaning. The arms of the ladder stabilizer rested immediately below the window sill where plaintiff was going to work, a little more than 10 feet above the ground.

Plaintiff tested the ladder by stepping on the first two rungs to make sure both legs were resting firmly and evenly on the ground.

He climbed the ladder and cleaned the sill, descended to get a silicone spray, climbed up again to spray the screen track, and descended again. He picked up two screens in his left hand and climbed the ladder a third time, stopping on the third or fourth rung from the top. As he began to install the screen on the left he felt a sensation of movement to the right, forward toward the building, and downward. He turned to look; the next thing he remembered was lying on his back on the ground with the ladder on top of him, the stabilizer arms up in the air.

Plaintiff suffered a comminuted fracture of the right humerus near the shoulder. A physician who had examined plaintiff testified that at the time of trial the fracture site had healed, but there was considerable overriding of bone and a resulting 3/4-inch shortening of the arm, a one-third loss of normal movement, chronic pain, and severe degenerative arthritis.

After he came home from the hospital, plaintiff examined the ladder stabilizer. "It was broke, bent up, sheared through at the top bolt hole on the right-hand side, but still confined to the rest of the unit by a crossbar."

On June 18, 1976, plaintiff filed a strict liability suit against defendant. As amended, the complaint alleged that the stabilizer was defective and unreasonably dangerous because it failed to stabilize the ladder when used in a reasonably foreseeable manner; it failed to support reasonably foreseeable loads and stresses; the tubing was severely weakened by bolt holes; the bolt holes were placed in an area where stresses are concentrated; the bolts did not fit the bolt holes adequately; the bolt holes were ragged and bolt fittings loosened with use, thereby increasing stress concentrations; the bolts and nuts faced directly into the tubing, thereby increasing weakness; bracing was inadequate; there was no clamp to keep the stabilizer centered on the ladder; the stabilizer lacked an adequate safety factor; and the stabilizer forced the user to lean to one side of the ladder. The complaint further alleged failure to warn that the stabilizer had a propensity to become distorted, bend, break, or otherwise fail.

At trial, plaintiff called Marvin Salzenstein, a mechanical engineer, to give expert testimony about the defective condition of the ladder stabilizer. In November 1981, Salzenstein had examined the fractured stabilizer, a new model 75 stabilizer, all the drawings that defendant had provided for that model, a metallurgist's report on the strength of the material, and a Werner model 77 stabilizer. He also photographed the fractured stabilizer. The purpose of his examination was to determine where and how the failure occurred and whether

the stabilizer was adequately designed for its anticipated use. He concluded that the stabilizer design was inadequate; while the ladder was in an upright position the right arm bent toward the user of the ladder and then fractured across two of the bolt holes that held the arm to the bracket. The fracture caused an instability that permitted the ladder to collapse. He stated that the appearance of the fracture surface was inconsistent with the theory that the ladder slipped and slid down the wall to the right and that the stabilizer fractured when the arm hit the ground. He stated further that because of the wall beside the window where plaintiff was working, it would have been impossible for the ladder to slip to the right and fall in that manner.

Salzenstein testified that when a ladder stabilizer is in use the weight of the user and the reaction force from the stabilizer bearing against the wall create stress forces that are transferred entirely through the structure of the stabilizer and the ladder. The presence of bolt holes reduces the area available to carry the load and also concentrates stress factors around the holes. The stress concentration in the stabilizer in question was three or four times greater near the edge of the hole than in an area unaffected by the hole. Using a metallurgist's report on the yield strength of the aluminum of the stabilizer and applying a safety factor of four, Salzenstein had determined that the maximum allowable stress at the bolt holes was 7,500 pounds per square inch. After correcting an earlier error in his calculations, Salzenstein testified that the actual stress at the bolt holes had been 10,000 pounds per square inch, which exceeded the maximum safe amount.

A further problem, Salzenstein stated, was that the stabilizer design included space between the bolts and the holes. Where cyclic loading occurs, the loose fasteners will "rack," or wobble, causing "fretting," which will lead to microscopic cracking and ultimate failure. Another design defect was the use of threaded bolts, which increased the friction between the surfaces and hastened destruction. Salzenstein had found evidence that racking and fretting had occurred at the bolt holes on the stabilizer in this case. His opinion was that the stabilizer was in an unreasonably dangerous condition as a result of its design, that this condition was the proximate cause of the fracture of the arm at the bolt hole, and that this fracture was the cause of plaintiff's fall.

Defendant called two expert witnesses. Gene Litwin, a mechanical engineer, stated that he had examined the broken stabilizer and a new stabilizer of the same model, and reviewed defendant's design specifications. Litwin testified that he had found errors in Salzenstein's cal-

culations and conclusions that discredited Salzenstein's opinions. He challenged Salzenstein's stress calculations, stating that a stress concentration factor of 1.25 should have been used. He admitted on cross-examination that this factor would be substantially increased if the bolt did not fit the hole. His "best estimate" was that under the conditions at the time of plaintiff's accident the maximum stress concentration would be 7,321.5 pounds per square inch. Litwin's calculations indicated "a proper and adequate safety factor" and led him to "the conclusion that the product is adequately and safely designed and one would not expect failures in normal usage." His opinion was that "the fracture was caused by a sudden sideward load applied to the tip of the right stabilizer arm" as a result of the ladder's falling, causing the right arm of the stabilizer to strike the ground. He stated that the stabilizer could not have failed in an upright position.

Defendant also called Lyle Jacobs, a metallurgical engineer, to testify as an expert witness. Jacobs stated that there was nothing internally wrong with the aluminum of which the stabilizer was constructed. He also said there was no evidence of fatigue and no evidence that repetitive loading had caused the fracture; the stabilizer arm bent and broke off instantaneously when the ladder fell and the arm struck the ground. He also stated that the bolts in the broken stabilizer did not fit well in the bolt holes; however, he found no evidence of fretting. Jacobs testified that he could find no physical evidence to support Salzenstein's theory.

Plaintiff called Thomas Losey to testify about his personal experience with a model 75 ladder stabilizer manufactured by defendant. Losey stated that while using a ladder with the stabilizer attached to paint a house he felt the top of the ladder move and then he fell, breaking both feet. The ladder fell straight down the side of the house. After returning from the hospital that day he examined the stabilizer and found that the right arm was broken.

Plaintiff informed the court that he wished to call Dr. Paul Gordon, a metallurgical engineer, as a rebuttal witness. Gordon previously had been deposed by defendant. Defendant objected to plaintiff's calling this witness on the grounds that his testimony would be cumulative and prejudicial and that it should have been presented in plaintiff's case in chief. Defendant did not object that Gordon's testimony would exceed the scope of proper rebuttal. Plaintiff responded that although he had not intended originally to call a metallurgist as an expert witness, he felt it necessary to rebut the testimony of Jacobs, the metallurgist who had been called by defendant, because Jacobs "testified to certain things that were not in his deposition." Fur-

thermore, Litwin, a mechanical engineer, also had stated his opinion on metallurgical matters. The trial judge denied defendant's motion and ruled that it was proper for plaintiff to call Gordon to rebut the testimony given by defendant's metallurgist.

Gordon testified that he had examined the broken stabilizer. He agreed with Jacobs' opinion that there was nothing internally wrong with the aluminum itself. He disagreed with Jacobs in that he found evidence that fretting had occurred between the bolts and the bolt holes. Gordon also testified that just before the fracture occurred the right stabilizer arm had been bent toward the user on the ladder and away from the wall at about a 20° angle. His opinion was that this bending, which was produced by the forces exerted by the user's weight on the ladder in service, "was the source of the trouble in this case." The bend occurred while the stabilizer was intact and in an upright position against the wall. Gordon also found a second bend, made at a different time, that had the appearance characteristic of an impact. His opinion was that during service the right stabilizer arm bent slowly for a while and then, on the occasion of this accident, bent suddenly, upsetting the ladder and causing the fall. The second bend was caused by the impact of the fall. Defendant did not object to Gordon's testimony as being outside the proper scope of rebuttal.

The jury returned a verdict in favor of plaintiff and assessed damages of $89,282.96. At the hearing on defendant's post-trial motion for a new trial, defendant argued that it had been error to allow Gordon to testify. The trial judge stated, "You certainly had the right to bring back both Jacobs and Whitman [sic] if you wanted to. ***[I]t wasn't as though you didn't have an opportunity to call them back if it would have made any difference." In denying defendant's motion for a new trial, the trial judge said, "I do want the record to clearly reflect that Dr. Gordon's deposition had previously been taken. There was no claim of surprise, and the Court offered to counsel for the defense the opportunity *** to present a witness, in effect, in surrebuttal to counter Dr. Gordon's testimony, whether he brought back one of their prior witnesses or would bring somebody else in. One of the things that I try to accomplish on each trial is to avoid trial by surprise. And I don't have the feeling that there was a trial by surprise in this particular case."

OPINION

■ Defendant's first argument on appeal is that it was error for the trial court to permit plaintiff to present testimony during rebuttal that did not in fact rebut, contradict, or disprove testimony of any de-

fense witnesses but did present a new theory concerning the defect of the ladder stabilizer. Plaintiff argues that defendant's objection has been waived for failure to make a proper objection to the introduction of this testimony at the time of trial, citing *Turney v. Ford Motor Co.* (1981), 94 Ill. App. 3d 678, 418 N.E.2d 1079, *Escher v. Norfolk & Western Ry. Co.* (1979), 77 Ill. App. 3d 967, 397 N.E.2d 9, *aff'd* (1980), 82 Ill. 2d 110, 411 N.E.2d 864, and *Klatt v. Commonwealth Edison Co.* (1964), 55 Ill. App. 2d 120, 204 N.E.2d 319. The record indicates that the only objections defendant made regarding Dr. Gordon's prospective testimony were that it might be cumulative and that it should have been presented in plaintiff's case in chief. At the time the testimony that defendant now finds objectionable was elicited, defense counsel was silent. Accordingly, defendant is precluded from arguing on appeal that Dr. Gordon's testimony went beyond the proper scope of rebuttal because failure to object results in a waiver of the issue. *Greig v. Griffel* (1977), 49 Ill. App. 3d 829, 364 N.E.2d 660.

■ Even if defendant had preserved this issue for appeal, we could find no merit in the claim that the admission of Dr. Gordon's testimony was reversible error because the testimony exceeded the permissible scope of rebuttal. Defendant concedes that a portion of Gordon's testimony was unobjectionable: "Gordon did in fact attempt to rebut some of the conclusions made by Jacobs ***." Accordingly, defendant cannot logically complain that the trial judge abused his discretion in permitting Gordon to testify. Defendant asks this court to find that, although this part of Gordon's testimony was proper rebuttal, it was nevertheless reversible error to permit him to testify that a bend in the stabilizer had upset the ladder and caused plaintiff's accident. Defendant argues that this opinion of Gordon's, "of course, is inconsistent with Salzenstein's theory that a fracture in the arm of the stabilizer caused the ladder to become unstable and was improper rebuttal." In our view, defendant's effort to raise to the level of reversible error this nice distinction between whether a "bend" or a "fracture" in the stabilizer arm upset plaintiff's ladder lacks substance.

■ ■ "Rebuttal evidence is that which answers, explains, repels, contradicts, or disproves evidence introduced by the defendant." (*Brown v. Sexner* (1980), 85 Ill. App. 3d 139, 149, 405 N.E.2d 1082, 1090; see also *People v. King* (1978), 61 Ill. App. 3d 49, 377 N.E.2d 856; *Apicella v. Mace* (1977), 47 Ill. App. 3d 43, 361 N.E.2d 756.) " '[W]here a defendant introduces evidence of an affirmative matter in defense or justification, the plaintiff, as a matter of right, is entitled to introduce evidence in rebuttal as to such affirmative matter.' "

(*Pellico v. E. L. Ramm Co.* (1966), 68 Ill. App. 2d 322, 328, 216 N.E.2d 258, 261, quoting *Loftus v. Loftus* (1907), 134 Ill. App. 360, 362.) While "[a] party holding the affirmative can introduce in rebuttal only such evidence as tends to answer *** or dispose of new affirmative matter introduced by the defendant" (*Rodriguez v. City of Chicago* (1974), 21 Ill. App. 3d 623, 625, 316 N.E.2d 88, 90), "[a]dmission of rebuttal testimony is a matter left to the discretion of the trial court and its exercise thereof will not be interfered with by a court of review unless an abuse of discretion is shown." *People v. King* (1978), 61 Ill. App. 3d 49, 56, 377 N.E.2d 856, 861.

Furthermore, where testimony offered in rebuttal might have been introduced in plaintiff's case in chief, its admission in rebuttal is a decision committed to the discretion of the trial judge (*Kupcikevicius v. Fitzgibbons* (1976), 41 Ill. App. 3d 405, 354 N.E.2d 434; *Rodriguez v. City of Chicago*), and a reviewing court will not interfere in the absence of a showing of an abuse of that discretion (*Department of Public Works & Buildings v. Chicago Title & Trust Co.* (1950), 408 Ill. 41, 95 N.E.2d 903, *cert. denied* (1951), 341 U.S. 931, 95 L. Ed. 1360, 71 S. Ct. 804; *Brown v. Sexner; People v. King*). In our view, no such abuse of discretion by the trial judge has been demonstrated in this case. Plaintiff's theory of liability was that the stabilizer failed while in an upright position. Defendant argued through its witnesses that the stabilizer failed only as a result of striking the ground after plaintiff had fallen. We can discern neither a new theory of liability nor improper rebuttal in Gordon's statement that the cause of plaintiff's accident was the failure of the stabilizer arm while the ladder was upright against the wall, and the cause of the failure was a bend rather than a fracture of the arm. At most, Gordon's opinion was a variation on Salzenstein's theme. We find defendant's argument that Gordon's opinion was "inconsistent" with Salzenstein's and therefore improper rebuttal to be meritless.

Defendant's second argument for reversal is that the jury's verdict was contrary to the manifest weight of the evidence. We disagree. "[A] verdict based on conflicting evidence should not be disturbed on appeal unless it is contrary to the manifest weight of the evidence." (*Career Opportunities, Inc. v. Grant, Wright & Baker, Inc.* (1980), 91 Ill. App. 3d 984, 987, 415 N.E.2d 463, 465; see also *Haag Brothers, Inc. v. Artex International, Inc.* (1978), 60 Ill. App. 3d 141, 376 N.E.2d 636.) It is the function of the jury to resolve controverted issues of fact and to determine the credibility of witnesses and the weight to be accorded their testimony. (*Didier v. Jones* (1978), 61 Ill. App. 3d 22, 377 N.E.2d 572; *Haag Brothers, Inc. v. Ar-*

*tex International, Inc.*) A verdict is considered to be against the manifest weight of the evidence only when the opposite conclusion is clearly evident (*Career Opportunities v. Grant, Wright & Baker; Didier v. Jones; Murray v. Kleen Leen, Inc.* (1976), 41 Ill. App. 3d 436, 354 N.E.2d 415), or when the jury's verdict is palpably erroneous (*Didier v. Jones*) or appears to be unreasonable, arbitrary, and not based on the evidence (*Murray v. Kleen Leen, Inc.*).

"Whether the court would differ with the jury's conclusion is not important so long as reasonable persons could differ in their conclusions." (*Kern v. Uregas Service of West Frankfort, Inc.* (1980), 90 Ill. App. 3d 182, 199, 412 N.E.2d 1037, 1050.) "Where there is a conflict in the testimony, a reviewing court may not substitute its judgment for that of the jury in passing on the weight of the evidence and on the credibility of the witnesses. (*E. A. Meyer Construction Co. v. Drobnick* (1964), 49 Ill. App. 2d 51, 199 N.E.2d 447.) A verdict may not be set aside merely because the jury could have determined the credibility of the witnesses differently or drawn different inferences of fact, and where credible evidence supports the verdict, the court may not say that the conclusions other than the ones drawn by the jury are more reasonable. *McCottrell v. Benson* (1961), 32 Ill. App. 2d 367, 178 N.E.2d 144." *Didier v. Jones* (1978), 61 Ill. App. 3d 22, 27, 377 N.E.2d 572, 576.

As outlined in the statement of facts, evidence was presented in support of plaintiff's claim by, among others, plaintiff himself, two expert witnesses, and another person who had suffered an accident using a ladder stabilizer manufactured by defendant. Applying the above principles regarding the determination of whether a verdict is contrary to the manifest weight of the evidence to the facts of this case, we find it clear that controverted issues regarding the credibility of witnesses and the weight to be accorded their testimony, as well as controverted issues of fact were presented to the jury. Defendant has failed to demonstrate that the jury's verdict was "Palpably erroneous" or that it appears to be "unreasonable, arbitrary, and not based on the evidence." Under these circumstances we would be entirely unjustified in setting aside the verdict as defendant requests, and we decline to do so. The judgment of the trial court accordingly is affirmed.

Affirmed.

ROMITI, P.J., and JOHNSON, J., concur.