FIRST NATIONAL BANK OF EVERGREEN PARK, Plaintiff-Appellant, v. CHRYSLER REALTY CORPORATION *et al.*, Defendants-Appellees.

First District (4th Division) No. 87—0074

Opinion filed March 31, 1988.—Rehearing denied April 25, 1988.

Gierach, Schussler & Walsh, Ltd., of Chicago (James E. Gierach, of counsel), for appellant.

Butler, Rubin, Newcomer, Saltarelli & Boyd, of Chicago (Gerald G. Saltarelli and Robert N. Hermes, of counsel), for appellee Chrysler Realty Corporation.

Gordon & Gordon, Ltd., of Chicago (Robert E. Gordon, of counsel), for appellee Fireside Chrysler-Plymouth, Inc.

JUSTICE LINN delivered the opinion of the court:

Plaintiff, the First National Bank of Evergreen Park, as trustee under trust No. 2037, brought a forcible detainer action in the circuit court of Cook County against defendants, the Chrysler Realty Corporation (Chrysler Realty) and Fireside Chrysler-Plymouth, Inc. (Fireside Chrysler). Plaintiff sought possession of an automobile dealership building that it leased to defendants. A jury returned a verdict in favor of defendants.

Plaintiff appeals from the judgment entered on the verdict. Plaintiff contends: (1) the trial judge should have granted it a judgment *n.o.v.*; (2) the verdict was against the manifest weight of the evidence; (3) defendants' affirmative defenses were legally insufficient and nongermane; (4) the trial judge admitted into evidence irrelevant and prejudicial matter; (5) a conflict of interest existed between plaintiff and its trial counsel; (6) the trial judge improperly instructed the jury, and (7) the trial misconduct of Fireside Chrysler's attorney was so prejudicial as to deny it a fair trial.

We affirm the judgment of the trial court.

BACKGROUND

The record shows that on September 11, 1970, plaintiff leased a newly constructed automobile dealership building to Chrysler Realty in Schaumburg, Illinois. Kenneth Anderson was the landlord under the 25-year lease. Chrysler Realty was the lessee, which in turn subleased the premises to Fireside Chrysler, a franchised Chrysler dealer.

The lease provided that the landlord make all structural repairs arising from faulty workmanship, materials, or design. Chrysler Realty was obligated to make all other repairs necessary to keep the premises in as good a condition as when received. Further, if the premises were "partially or totally destroyed by fire, casualty, or other cause or happening," then the landlord would restore the premises.

Additionally, if Chrysler Realty failed to perform any of its obligations under the lease and failed to cure its default within 30 days after notice from the landlord, the landlord could reenter and repossess the premises. The lease would terminate upon reentry. The sublease obligated Fireside Chrysler to keep the premises in "first-class order and repair" and to perform all of Chrysler Realty's obligations under the lease.

The record further shows that, during a routine inspection in 1983, Chrysler Realty determined that the roof needed repairs. The roofing company that Fireside Chrysler hired did not install a new roof. The roofing company, rather, "re-roofed" the building by applying a "capsheet," *i.e.,* another layer, to the old roof.

On April 30, 1984, a windstorm tore a hole in a portion of the capsheet; water collected and became trapped between the capsheet and the original roof. The landlord notified Chrysler Realty of the damage. In a letter dated May 16, 1984, the landlord expressed his displeasure as to the building's maintenance and described the previous roof repair as unacceptable.

The landlord and a field engineer of Chrysler Realty inspected the roof on May 29, 1984. In addition to assessing the windstorm damage, the Chrysler Realty engineer concluded that the capsheet was incorrectly installed. Representatives of Chrysler Realty met with a representative of Fireside Chrysler, who promised to make repairs.

The record further shows that, a few days prior to his inspection of the roof, the landlord received an insurance settlement of $7,608.31 for the windstorm damage to the roof. However, in a letter to Chrysler Realty dated June 1, 1984, the landlord stated:

"I have settled with the insurance company to replace the damaged roof stacks and replace the section of your repair that

blew off the original roof. I have told [the Chrysler Realty zone manager] and [the Chrysler Realty field engineer] that I will either make the repair to your improper roofing and put it back the way it was or issue you the $900.00 check so you may credit it against putting the roof and the sheet metal back to it's [*sic*] original condition."

The landlord again expressed his dissatisfaction with the building's maintenance and roof repairs.

Chrysler Realty accepted the $900. The landlord mailed to Fireside Chrysler a check for that amount to be applied to the repairs. In mid-July of 1984, however, Fireside Chrysler returned the landlord's check to Chrysler Realty. The dealer believed that Anderson received more than $900 from the insurance company.

On July 20, 1984, the landlord notified Chrysler Realty that it was in default under the lease, for the reasons that he stated in his May 16 and June 1 letters. The landlord further notified Chrysler Realty, pursuant to the lease, that it had 30 days to cure the default.

Chrysler Realty scheduled a meeting with the landlord and the insurance adjustor for August 1, 1984. The meeting took place, but the adjustor did not attend. The record contains conflicting evidence at this point. Chrysler Realty presented evidence that the landlord stated at the meeting that he received an insurance settlement of $900 for the windstorm damage to the roof; further, Chrysler Realty would receive that amount to repair the roof and no more.

The landlord presented evidence, however, that he did not disclose the amount of the insurance settlement at the August 1 meeting. Further, he did not state that the amount of the settlement was $900. Rather, he told the Chrysler Realty representatives that he received a bid of $900 to repair only the capsheet damage. Further, the $900 check, which he mentioned in his June 1, 1984, letter, referred to the bid for the capsheet repair.

On August 8, 1984, Chrysler Realty informed the landlord's attorney by letter that it desired to repair the windstorm damage, but insisted on knowing the amount of the insurance settlement. A representative of Chrysler Realty testified that he had a telephone conversation with the attorney on August 13, 1984. The attorney stated that the landlord would repair the windstorm damage if Chrysler returned the $900.

The record shows that the landlord's attorney sent a letter to Chrysler Realty dated August 14, 1984. The attorney therein stated, however, that on receipt of the $900, the landlord would repair only the capsheet. Further, Chrysler Realty was still in default under the

lease as described in the landlord's July 20, 1984, letter.

Chrysler Realty responded in a letter to the landlord's attorney dated August 17, 1984, which included the $900. Referring to their telephone conversation, Chrysler expected the landlord to repair the total windstorm damage to the roof, including draining the water trapped in the roof.

On August 21, 1984, the landlord's attorney wrote Chrysler Realty, stating that the landlord would repair only the capsheet; he would not drain the storm water or make any other repairs. The attorney also declared the lease terminated, because Chrysler Realty failed to cure the default under the lease within 30 days of the landlord's July 20 notice. The landlord filed his complaint for possession the next day.

Representatives of Chrysler Realty and Fireside Chrysler met on August 27, 1984. They decided to proceed with the roof repairs. Chrysler Realty began accepting bids in early October. Construction began in late October and continued through December. The capsheet and original roof were removed and replaced with a new asphalt and gravel roof, at a cost of $85,289.

Plaintiff's case essentially was that Chrysler Realty breached the lease provision requiring it to repair and keep the premises in as good a condition as when delivered. Further, Chrysler failed to cure this default within 30 days after the landlord's notice. The record shows that plaintiff based its case solely on the roof and no other part of the premises.

Chrysler Realty filed an amended answer, in which it denied plaintiff's claim for possession and pled seven affirmative defenses. Chrysler Realty also filed an amended counterclaim alleging that the landlord breached the lease and committed a misrepresentation. The company sought the cost of rebuilding the roof.

The trial court subsequently struck two of Chrysler Realty's affirmative defenses and severed another, leaving the following: (1) the landlord's notice of default was ineffective because no default existed at that time; (2) the landlord induced Chrysler Realty into not beginning the roof repairs within the 30-day cure period; (3) the landlord materially delayed the roof repairs by fraudulently misrepresenting the amount of the insurance settlement; and (4) there had been no material breach of the lease.

The cause was tried to a jury. On May 7, 1986, the jury returned a verdict in favor of defendants; the trial judge entered judgment on the verdict. Chrysler Realty voluntarily withdrew its counterclaim. The trial judge subsequently denied plaintiff's amended post-trial mo-

tion and awarded Chrysler Realty costs of $3,981.34. Plaintiff timely appeals.

OPINION

## I

We first address plaintiff's attack on the sufficiency of the evidence. Plaintiff contends that this court should reverse the judgment because the jury's verdict was against the manifest weight of the evidence and, alternatively, that the trial judge should have granted it a judgment *n.o.v.*

## A

■■ Plaintiff contends that this court should reverse the judgment because the jury's verdict was against the manifest weight of the evidence. It is the function of the jury to resolve controverted issues of fact and to determine the credibility of witnesses and the weight, if any, of their testimony. (*Didier v. Jones* (1978), 61 Ill. App. 3d 22, 27, 377 N.E.2d 572, 575-76.) The question of whether there has been a performance or breach of a contract is one of fact for the jury to determine. *American National Bank & Trust Co. v. Continental Casualty Co.* (1982), 105 Ill. App. 3d 293, 296, 434 N.E.2d 321, 324; 12A Ill. L. & Prac., *Contracts* §399 (1983).

Where there is a conflict in the testimony, a reviewing court may not substitute its judgment for that of the jury in passing on the weight of the evidence and on the credibility of the witnesses. A reviewing court may not set aside a verdict merely because the jury could have determined the credibility of the witnesses differently or drawn different inferences of fact. Where credible evidence supports the verdict, the reviewing court may not say that the conclusions other than the ones drawn by the jury are more reasonable. Reviewing courts do not consider verdicts and judgments to be against the manifest weight of the evidence unless a conclusion opposite to that reached by the jury is clearly evident or the jury's verdict was palpably erroneous. "Manifest weight" is that weight which is clearly evident, plain and indisputable. (*Didier v. Jones* (1978), 61 Ill. App. 3d 22, 27, 377 N.E.2d 572, 575-76.) A court of review will affirm a jury verdict unless it is against the manifest weight of the evidence. *Lynch v. Board of Education* (1980), 82 Ill. 2d 415, 423, 412 N.E.2d 447, 454; *Svenson v. Miller Builders, Inc.* (1979), 74 Ill. App. 3d 75, 83, 392 N.E.2d 628, 634.

■■ Applying these principles to the instant case, we conclude

that the jury's verdict for defendants was not against the manifest weight of the evidence. The record shows that both sides presented conflicting evidence on all issues raised by plaintiff's complaint and by defendants' affirmative defenses. After reviewing the record, we cannot say that a verdict for plaintiff is clearly evident or that the verdict for defendants was palpably erroneous. We hold that the record contains more than sufficient evidence to support the jury's verdict.

## B

■■ Plaintiff alternatively contends that the trial judge should have granted it a judgment *n.o.v.* A judgment *n.o.v.* should be entered "only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.) We previously held that the jury's verdict was not against the manifest weight of the evidence. It follows, therefore, that plaintiff cannot meet the more nearly conclusive *Pedrick* standard. We hold that the trial judge did not abuse his discretion in denying plaintiff's motion for a judgment *n.o.v.*

## II

Plaintiff next contends that defendants' affirmative defenses were legally insufficient and nongermane to the litigation. Plaintiff assigns various pleading errors to, and attacks the evidentiary basis of, three out of defendants' four affirmative defenses. Plaintiff also contends that the trial judge admitted into evidence irrelevant and prejudicial matter; specifically, the fact that defendants rebuilt the roof several months after the termination of the lease.

## A

■■ The common law permitted an individual, who was rightfully entitled to enter upon land, to do so with force and arms and retain possession by force. (*City of Chicago v. Chicago Steamship Lines, Inc.* (1927), 328 Ill. 309, 312, 159 N.E.2d 301, 302.) The forcible entry and detainer statute now prohibits this conduct. Ill. Rev. Stat. 1985, ch. 110, par. 9—101.

Since a forcible detainer action is a statutory proceeding in derogation of the common law, a court entertaining the action is considered to be a court of special and limited jurisdiction for that proceeding and must comply with the procedure prescribed by the statute. (*Clark Oil & Refining Corp. v. Banks* (1975), 34 Ill. App. 3d 67, 71,

339 N.E.2d 283, 286.) The statute provides in pertinent part:

"The defendant may under a general denial of the allegations of the complaint offer in evidence any matter in defense of the action. No matters not germane to the distinctive purpose of the proceeding shall be introduced by joinder, counterclaim or otherwise." Ill. Rev. Stat. 1985, ch. 110, par. 9—106.

The "distinctive purpose of the proceeding" is the adjudication solely of the parties' right to possession. The proceedings should not be burdened with questions of title or other collateral matters that are not directly related to the issue of possession. (*Clark Oil*, 34 Ill. App. 3d at 71, 339 N.E.2d at 286.) Our supreme court has defined "germane" as meaning closely allied, closely related, closely connected, or appropriate. (*Rosewood Corp. v. Fisher* (1970), 46 Ill. 2d 249, 257, 263 N.E.2d 833, 838.) Further, in actions involving commercial leases, this court has more strictly construed matters considered germane to the issue of possession. *General Parking Corp. v. Kimmel* (1979), 79 Ill. App. 3d 883, 886-87, 398 N.E.2d 1104, 1107.

■■ Applying these principles to the case at bar, we conclude that defendants' affirmative defenses were legally sufficient. The forcible entry and detainer statute expressly allows a defendant to make a general denial and present any germane matter in defense of the action. Defendants in the instant case followed the statute. Thus, plaintiff's assignments of various pleading errors and attacks on the evidentiary basis of defendants' affirmative defenses are not well taken.

After reviewing the record, we further conclude that all of the defendants' affirmative defenses were germane to the issue of possession. The defenses were direct responses to plaintiff's claims that defendants failed to properly maintain the roof and failed to cure the alleged defect within 30 days after the landlord's notice. The defenses refuted the facts plaintiff needed to prove to establish its right to possession. We find no error in defendants' affirmative defenses.

B

Plaintiff also contends that the trial judge admitted into evidence irrelevant and prejudicial matter. Defendants presented evidence that they rebuilt the roof from late October through December of 1984. Plaintiff argues that whether defendants rebuilt the roof was irrelevant to the litigation because the lease terminated on August 20, 1984. The subsequent construction of a new roof, therefore, was an untimely cure. Plaintiff further claims that the introduction of this irrelevant evidence prejudiced its case.

■ Rules concerning the construction of written contracts apply equally to written leases. (*Pioneer Trust & Savings Bank v. Lucky Stores, Inc.* (1980), 91 Ill. App. 3d 573, 575, 414 N.E.2d 1152, 1154.) Plaintiff is correct that if a forfeiture is properly declared, then no subsequent performance or offer to perform, no matter how strictly in compliance with the contract, will relieve the offending party from a forfeiture. *Miles Homes, Inc. v. Mintjal* (1974), 17 Ill. App. 3d 642, 646, 307 N.E.2d 724, 727.

For a party to terminate or rescind a contract, however, the nonperformance or breach by the other party must be substantial or material. The test is whether the breach is so substantial and fundamental as to defeat the objects of the parties in making the agreement, or whether the failure to perform renders performance of the rest of the contract different in substance from the original agreement. (*Wright v. Douglas Furniture Corp.* (1968), 98 Ill. App. 2d 137, 143, 240 N.E.2d 259, 262.) The breach must be so material and important as to justify the injured party in regarding the whole transaction as at an end. *C. G. Caster Co. v. Regan* (1980), 88 Ill. App. 3d 280, 285, 410 N.E.2d 422, 426, quoting A. Corbin, Contracts §946, at 925 (1952).

■ In the instant case, the evidence that defendants eventually rebuilt the roof went to the issue of whether their alleged breach was material. From the evidence of their late performance, the jury could conclude that their alleged breach was not so important as to justify the landlord in regarding the lease as at an end. We further conclude that this evidence was clearly germane to the issue of possession. If defendants' breach was material, then plaintiff properly rescinded the lease, thereby acquiring the right to possession. However, if defendants' breach was not material, then plaintiff would have had no right to rescind the lease, and defendants would have the better right to possession. We hold, therefore, that the trial judge did not abuse his discretion in admitting into evidence the fact that defendants rebuilt the roof several months after the termination of the lease.

### III

■ Plaintiff next contends that defendants used a conflict of interest between plaintiff and its trial attorney to deny it a fair trial. The Chrysler Realty representative testified as to his August 13, 1984, telephone conversation with the landlord's attorney. The representative testified that the attorney verbally agreed, on behalf of the landlord, to repair the total windstorm damage to the roof, including draining the water trapped in the roof. The landlord's attorney was one of plaintiff's trial counsel. Defendants objected before he began

his cross-examination. Defendants argued that plaintiff's trial counsel was barred from cross-examining the witness on the telephone conversation and resulting letters.

Plaintiff claims that the trial judge barred its trial counsel from cross-examining the witness and also "tacitly" barred its attorney's cocounsel from cross-examining the witness on the telephone conversation and resulting letters. Plaintiff contends that the inability of its attorneys to cross-examine the Chrysler Realty representative on this testimony denied it a fair trial.

We disagree; plaintiff misreads the record. The trial judge barred the landlord's attorney from cross-examining the witness on the telephone conversation and resulting letters due to the conflict of interest. However, despite reservations which he expressed on the record, the trial judge allowed the attorney's cocounsel to cross-examine the witness. The record shows that the trial judge did not limit the cross-examination of cocounsel. Rather, the trial judge directed plaintiff's counsel and cocounsel to develop an outline of cocounsel's cross-examination and to submit the outline for approval. During a recess, plaintiff's attorneys voluntarily decided to avoid the entire issue of the telephone conversation and resulting letters.

It is well settled that the actions of an attorney in the conduct and management of a case, which includes trial strategy, are binding on the client. Even negligence of counsel is insufficient to warrant a new trial. (*Laff v. John O. Butler Co.* (1978), 64 Ill. App. 3d 603, 621, 381 N.E.2d 423, 436.) Further, this court has held that it is an abuse of discretion to grant a motion for a new trial in a civil case when the basis of the motion is inadequacy of counsel for the losing party. *Andrea Dumon, Inc. v. Pittway Corp.* (1982), 110 Ill. App. 3d 481, 491, 442 N.E.2d 574, 581.

Applying these principles to the instant case, we conclude that plaintiff's contention lacks merit. Simply put, plaintiff's trial counsel chose to avoid the ethical dilemma of which plaintiff now complains. Their decision to avoid the subject of the telephone conversation and resulting letters was a voluntary decision involving trial strategy and, therefore, binding on plaintiff. Indeed, if plaintiff's counsel had sought leave, the trial judge had the discretion to allow counsel to testify. The attorney's testimony would have been admissible. His involvement with the case, however, would have been a factor going to the weight of his testimony. (110 Ill. App. 3d at 490-91, 442 N.E.2d at 580-81.) We hold that this contention does not entitle plaintiff to a new trial.

## IV

■ Plaintiff next claims that the trial judge erred in refusing one of its tendered jury instructions and in giving one of defendant's instructions. It will suffice to state the controlling principles. Plaintiff is correct that a litigant has the right to have the jury instructed upon his or her theory of the case when pleadings and evidence exist that support the theory. It is error, however, to give an instruction not based on evidence adduced at trial. *Vincent v. Wesolowski* (1967), 87 Ill. App. 2d 477, 484-85, 232 N.E.2d 120, 125.

Further, the trial court has great discretion as to the form of jury instructions. A reviewing court will not reverse a trial court for erroneously refusing a tendered instruction unless prejudice has resulted. (*Malek v. Lederle Laboratories* (1984), 125 Ill. App. 3d 870, 872, 466 N.E.2d 1038, 1039.) The test in determining the propriety of tendered instructions is whether the jury was fairly, fully, and comprehensively informed as to the relevant principles, considering the instructions in their entirety. *Bass v. Washington-Kinney Co.* (1983), 119 Ill. App. 3d 713, 723, 457 N.E.2d 85, 93.

Plaintiff assigns two errors to the trial judge's instructions to the jury. We need not further lengthen this opinion by discussing each issue. After carefully reviewing the instructions in their entirety, we conclude that the jury was fairly, fully, and comprehensively informed as to the relevant legal principles.

## V

Lastly, plaintiff claims that the misconduct of Fireside Chrysler's counsel denied it a fair trial. Citing numerous examples throughout the trial, including closing argument, plaintiff contends that counsel portrayed the landlord as a liar, injected improper innuendo into the trial, insinuated to the jury that evidence was kept from it, and appealed to the jury for sympathy. Plaintiff argues that the conduct of Fireside Chrysler's counsel was so improper and prejudicial as to warrant a new trial.

■ Trial misconduct and improper argument are sufficient bases for the award of a new trial. The trial court's decision to grant a new trial on these bases is to be accorded great deference and will not be disturbed on appeal absent a clear abuse of discretion. The reasoning of this rule is that the trial court observed the attitude and demeanor of counsel and the general atmosphere of the trial which cannot be reproduced in the record on appeal. The trial court is, therefore, in a better position than a reviewing court to determine the prejudicial effect, if any, of improper conduct during trial. *Bisset v. Village of*

*Lemont* (1983), 119 Ill. App. 3d 863, 865, 457 N.E.2d 138, 140.

We additionally note that in closing argument to the jury, counsel is allowed broad latitude in drawing reasonable inferences and conclusions from the evidence. Further, counsel may comment, within reasonable limits, on those who give evidence. The scope of permissible argument is also within the sound discretion of the trial court. *Saputo v. Fatla* (1975), 25 Ill. App. 3d 775, 788, 324 N.E.2d 34, 44.

 In the instant case, the trial judge found that counsel for Fireside Chrysler behaved inappropriately many times throughout the trial. The trial judge ruled, however, that counsel's lapses from professional trial conduct were not so prejudicial as to deny plaintiff a fair trial. Additionally, we have held in several similar cases that it is not error to describe a party or a witness as a liar where supported by evidence or inferences drawn therefrom. (*E.g.*, *Oh Boy Grocers v. South East Food & Liquor, Inc.* (1979), 79 Ill. App. 3d 252, 261, 398 N.E.2d 269, 276-77; *Legerski v. Nolan* (1971), 132 Ill. App. 2d 51, 55, 265 N.E.2d 696, 698.) After reviewing the record, we cannot say that the trial judge clearly abused his discretion.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

JIGANTI, P.J., and McMORROW, J., concur.